IN THE UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

|                                  |     |                            |
|----------------------------------|-----|----------------------------|
|                                  | )   |                            |
| IN RE AQUILA ERISA LITIGATION    | )   | Case No. 04-00865-CV-W-DW  |
|                                  | )   |                            |

ORDER

Before the Court is Plaintiffs' Motion for Class Certification (Doc. 38). Defendants filed Suggestions in Opposition (Doc. 77) and Plaintiffs submitted Reply Suggestions (Doc. 88). Plaintiffs submitted a Supplement to Plaintiffs' Motion for Class Certification (Doc. 93) and Defendants were permitted to respond (Doc. 100). A hearing on the motion was held on May 25, 2006. For the following reasons, Plaintiffs' Motion is GRANTED IN PART.

I.    Background

At issue in this case is the Aquila Retirement Investment Plan (the "Plan"), an ERISA plan maintained by Aquila, Inc. ("Aquila" or the "Company") for the benefit of its employees. The Plan is a defined contribution plan which allows employees to invest their earnings through 401(k), after-tax, and rollover contributions. Aquila also contributes to the Plan through 401(k) matching contributions and employee stock option plan ("ESOP") contributions that are made primarily in company stock into the Aquila Fund.

This case seeks to recover alleged losses of retirement savings of employees and former employees. Plaintiffs are employees and former employees who participated in and continue to participate in the Plan. Defendants Aquila and the named directors, officers and/or employees of Aquila (the "Individual Defendants") (collectively, "Defendants") allegedly were fiduciaries of the

1

Plan, as defined by ERISA.

In essence, Plaintiffs allege that Aquila stock was inflated during the proposed Class Period by the acts of Aquila and its directors, and that while it was inflated the fiduciaries of the Plan imprudently permitted Plan participants to continue to invest in Aquila stock. Plaintiffs' consolidated amended complaint (the "Complaint") asserts five counts under ERISA § 404(a)(1) for breach of fiduciary duties.[1] Plaintiffs seek Plan-wide relief on behalf of the Plan pursuant to ERISA § 502(a)(2)[2]. Under § 502(a)(2), only plan participants, beneficiaries, or fiduciaries have standing to sue on behalf of the plan.

---

[1] Plaintiffs' claims for co-fiduciary and non-fiduciary liability were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 14, 2005. (Doc. 53).

[2] Plaintiff's Complaint requests relief pursuant to ERISA §§ 502(a)(2) and (3). The Complaint invokes ERISA § 502(a)(3) only in relation to the liability of a non-fiduciary w(ho knowingly participates in a fiduciary breach and liability for such breach under ERISA § 502(a)(3). (Compl. ¶ 83). Plaintiffs' Motion for Class Certification, filed on May 23, 2005, calls for Plan-wide relief on behalf of Plaintiffs, the Plan and a class of Plan participants pursuant to ERISA §§ 502(a)(2) and (3). On October 14, 2005, this Court dismissed Plaintiffs' non-fiduciary duty count, the only one upon which Plaintiffs presumably hung their ERISA § 502(a)(3) cause of action. (Doc. 53). Plaintiffs confirmed at the May 25, 2006 class certification hearing that this action is strictly on behalf of the Plan, pursuant to ERISA § 502(a)(2).

> MR. JAFFE: The case has always been about an action brought on behalf of [the] Plan, 502(a)(2), to recover for the Plan based on liability to the Plan.

Rough draft of Tr. 24:8-10.

> THE COURT: So you just stated, you agree you're asking for certification under 502(a)(2)?
>
> MR. JAFFE: Yes sir.

Rough draft of Tr. 27:22-24. To the extent Plaintiffs wish to pursue their claims pursuant to ERISA § 502(a)(3), such individualized claims must be brought individually, not as a class.

In Count I, Plaintiffs allege that Defendants breached their fiduciary duty to disclose and inform in violation of ERISA § 404(a)(1)(A) and § 404(a)(1)(B). In Count II, Plaintiffs allege that Defendants breached their fiduciary duty to investigate and monitor Plan investments in violation of ERISA § 404(a)(1)(D). Count III alleges that Defendants breached their fiduciary duties in connection with the acquisition and retention of Aquila stock in the Aquila ESOP.[3] In Count IV, Plaintiffs allege that Defendants breached their duty of loyalty, including a duty to avoid conflicts of interest and to promptly resolve such conflicts in favor of the Plan and Plan participants when they occur. Count V alleges that Defendant Aquila and the Individual Defendants who served on Aquila's Board of Directors breached their duty to monitor the conduct of the Compensation Committee and the Pension and Benefits Committees (collectively, the "Committees").

II.     Standing

Defendants argue that the proposed Class cannot be certified because at least two named plaintiffs, Ms. Arr and Mr. Smith, lack standing. Under ERISA § 502(a)(2), only plan participants, beneficiaries, or fiduciaries have standing to sue on behalf of a plan. Defendants argue that since Ms. Arr and Mr. Smith are no longer participants in the Plan, and were not participants as of the date this lawsuit was filed, they lack standing, and accordingly the class may not be certified.

Both Ms. Arr and Mr. Smith took full distribution of the 401(k) accounts when their respective employment at Aquila ended. A "participant" has been defined by the Supreme Court as (1) an employee in currently covered employment; (2) an employee reasonably expected to be in currently covered employment; (3) a former employee with a reasonable expectation of returning to

---

[3]Defendants refer to Count I as Plaintiffs' "disclosure" and/or "misrepresentation" claim. Defendants refer to Counts II and III as Plaintiffs' "prudence" claims. The Court adopts this language, in addition to statutory language, throughout this Order.

3

current employment; or (4) a former employee with a colorable claim for vested benefits. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 (1989). Defendants argue that neither Ms. Arr nor Mr. Smith have a colorable claim to vested benefits or a reasonable expectation of returning to covered employment, and accordingly lack standing.

Mr. Smith has determined that he is unable to fulfill his responsibilities as a class representative and intends to withdraw as a proposed class representative.[4] Defendants argue that Ms. Arr lacks standing because she took full distribution of her 401(k) account when her employment at Aquila ended in July 2000. Because Ms. Arr was terminated during a large scale reduction in force, Defendants argue that she cannot reasonably expect to return to covered employment for Defendants. The Court disagrees. Ms. Arr alleges that the Plan was injured by Defendants during the Class Period and that but for the alleged ERISA violations, her account balance would have been larger at the time she took her distribution. If Plaintiffs prevail, any recovery would be allocated to the accounts of affected participants who have taken a distribution from the Plan. Ms. Arr therefore retains a "colorable claim to benefits" sufficient to confer on her standing to sue under ERISA § 502(a)(2) as a Plan participant. <u>In re Williams Cos. ERISA Litig.</u>, 231 F.R.D. 416, 422-23 (N.D. Ok. 2005) (citations omitted).

III.    <u>Legal Standard</u>

---

[4] While Plaintiffs stated in their Reply Suggestions and before the Court at the May 25, 2006 hearing that Mr. Smith intends to withdraw as a proposed Class representative. ("One Plaintiff has decided that he doesn't have the time to put in to become a class representative and . . thereby determined that he is going to withdraw from the class certification motion...And we [will] do whatever procedurally is necessary to withdraw him from the motion." Rough draft of Tr. 2:6-18). As of the date of this Order, Plaintiffs have not taken any action to so remove Mr. Smith from the class certification motion. Mr. Smith is directed to file a notice of withdrawal as Class Representative within ten (10) days of the date of this Order.

Plaintiffs seek to certify the proposed class under Federal Rule of Civil Procedure 23(b)(1), or in the alternative, 23(b)(2) or 23(b)(3). The proposed class (the "Class") consists of:

> All participants and beneficiaries of the Plan for whose individual accounts the Plan purchased and/or held investments in Aquila Stock, the Aquila Fund, and/or the Enron Fund from January 1, 1999 to May 5, 2004 (the "Class Period"). Excluded from the Class are Defendants herein, Aquila's Board of Directors throughout the Class Period, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.

To obtain class certification, Plaintiffs must satisfy the requirements of Rule 23(a). Once that burden has been bet, Plaintiffs must also satisfy one of the subsections of Rule 23(b). In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005). The Court must conduct a rigorous review under 23(a), bearing in mind that Plaintiffs assume the burden of proof to demonstrate that they meet the requirements of Rule 23 and that the class should be certified. Coleman v. Watt, 40 F.3d 255 (8th Cir. 1994). The interests of justice require that when in doubt, any error, if there is to be one, should be committed in favor of allowing the class action. In re Control Data Corp. Secs. Litig., 116 F.R.D. 216, 219 (D. Minn. 1986) (citations omitted). Lastly, in evaluating a motion for class certification, the Court must accept Plaintiffs' substantive allegations as true and not assess the likelihood of success on the merits. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

## IV.    Rule 23(a)

To proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Rule 23(a) provides:

> One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will

5

fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

A.    Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs ask the Court to certify a class comprised of roughly 7,000-plus Plan participants and Defendants do not challenge the numerosity requirement. Given the number of proposed Class members, the Court finds that Rule 23(a)(1) is clearly satisfied.

B.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in a class action. DeBoer v. Mellon Mort. Co., 64 F.3d 1171, 1174 (8th Cir. 1995); In re Hartford Sales Practices Litig., 192 F.R.D. 592, 602 (D. Minn. 1999). Commonality may be satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." Bublitz v. E.I. DuPont De Nemours & Co., 202 F.R.D. 251, 256 (S.D. Iowa 2001) (quoting Paxton v. Union Nat. Bank, 688 F.2d 552, 561 (8th Cir. 1982)).

Plaintiffs here argue that numerous questions of law and fact common to the proposed Class exist, including (1) whether Defendants were fiduciaries to the Plan; (2) whether Defendants breached their fiduciary duties owed to the Plan, Plan participants and beneficiaries; (3) whether Defendants' communications to the Plan and Plan participants provided complete and accurate information concerning the risks of investing in Aquila stock, the Aquila Fund, and the Enron Fund;

6

(4) whether Defendants provided false and misleading information, or failed to disclose material information, to the Plan and Plan participants concerning the financial health of the Company; (5) whether any steps were taken by Defendants to investigate and monitor whether it was appropriate to continue to offer and/or hold Aquila Stock, the Aquila Fund, or the Enron Fund as a retirement vehicle for the Plan and Plan participants; (6) whether Defendants took adequate steps to protect the Plan and recover Plan damages; (7) whether the Plan and Plan participants were injured by such alleged breaches; and (8) whether the Class is entitled to damages and injunctive relief.[5]

Defendants argue that Plaintiffs do not satisfy commonality with respect to the misrepresentation claim because such a claim requires that each Plan participant offer individualized proof of reliance on the alleged misrepresentation. Defendants, citing a recent Third Circuit case, allege that for Plaintiffs to recover on a misrepresentation claim, they must prove that: (1) an ERISA fiduciary acting as a fiduciary made a misrepresentation, (2) the misrepresentation was material, and (3) the plaintiff reasonably relied on the misrepresentation to his detriment. Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 385 (3d Cir. 2005).

The Eighth Circuit is silent on the issue of the elements of a misrepresentation-based breach

---

[5] A variety of courts have found that commonality exists when common questions similar to those posed by Plaintiffs in this action are present. See, e.g., DiFelice v. US Airways, Inc., 235 F.R.D. 70, 78 (E.D. Va. 2006) ("the central question at issue in this litigation is whether US Airways breached its fiduciary duty to select and monitor investment options prudently."); In re Williams, 231 F.R.D at 421-422 ("multiple common issues exist, including but not limited to: whether Defendants acted as fiduciaries; what duties, if any, were violated by Defendants with respect to the Plan; and whether Defendants improperly withheld information from Plan participants."); In re Ikon Office Solutions, Inc., 191 F.R.D. 457, 464 (E.D. Pa. 2000) ("common questions include whether the defendants acted as fiduciaries, what communications they made to plan participants and beneficiaries, and whether those communications contained material misrepresentations.").

7

of fiduciary duty claim.  The Third Circuit's decision in <u>Burstein</u> includes detrimental reliance as an element of a misrepresentation-based breach of fiduciary duty claim. The <u>Burstein</u> court rests its legal analysis on <u>Daniels v. Thomas & Betts Corp.</u>, 263 F.3d 66, 69 (3d Cir. 2001).  Both <u>Burstein</u> and <u>Daniels</u>, however, are cases in which the court considered claims for individual relief under ERISA § 502(a)(3).  Here, as discussed above, Plaintiffs' claims are for plan-wide relief pursuant to ERISA § 502(a)(2).  To the extent that the cases cited by Defendants require Plaintiffs to prove detrimental reliance, the result is unchanged.  ERISA § 502(a)(2) provides than an action may be brought by a retirement plan participant or beneficiary for relief "under section 1109 of this title." In turn, ERISA § 409 imposes personal liability on plan fiduciaries who breach their fiduciary duties "to make good to such plan any losses to the plan resulting from each such breach."  Thus, an action brought by a plan participant under ERISA §  502(a)(2) is brought in a representative capacity on behalf of the plan and solely for relief to the plan as a whole.[6]  <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 140-142 (1985).  Thus, even assuming that detrimental reliance must be proved, the relevant detrimental reliance is that of the Plan, not the individual Plan participants.

Further, Defendants' argument ignores the fact that the "appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." <u>In re Williams</u>, 231 F.R.D.

---

[6] A multitude of courts have certified a class under ERISA § 502(a)(2). <u>In re Williams</u>, 231 F.R.D. 416; <u>In re Reliant Energy ERISA Litig.</u>, No. 02-2051, 2005 WL 2000707 (S.D. Tex. Aug. 18, 2005); <u>In re Syncor ERISA Litig.</u>, 227 F.R.D. 338 (C.D. Cal. 2005); <u>Summers v. UAL Corp. ESOP Comm.</u>, No. 03-1537, 2005 U.S. Dist. LEXIS 11745 (N.D. Ill. Feb. 17, 2005); <u>In re CMS Energy ERISA Litig.</u>, 225 F.R.D. 539 (E.D. Mich. 2004); <u>Elec. Data Sys. Corp. ERISA Litig.</u>, 224 F.R.D. 613 (E.D. Tex. 2004); <u>In re WorldCom, Inc. ERISA Litig.</u>, No. 02-4816, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004); <u>Furstenau v. AT&T Corp.</u>, No. 02-5409, 2004 U.S. Dist. LEXIS 27042 (D.N.J. Sept. 2, 2004); <u>Rankin v. Rots</u>, 220 F.R.D. 511 (E.D. MI. 2004); <u>Nelson v. IPALCO Enters., Inc.</u>, No. IPO2-477CHK, (E.D. Pa. Mar. 11, 2003); <u>Ikon</u>, 191 F.R.D. 457 (E.D. Pa. 2000).

8

at 422 (citations omitted).  Defendant's focus on Plaintiff's conduct at this stage in the proceedings, fails to persuade the Court that class certification is inappropriate.  Further, as previously discussed, commonality requires the existence of only one common issue of law or fact.  Plaintiffs have established the existence of multiple common issues of law and fact exist in this case, thereby satisfying the commonality requirement.

C.    Typicality and Adequacy

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  This subsection simply requires "a demonstration that there are other members of the class who have the same or similar grievances as the [class representative]." Paxton, 688 F.2d at 562.  The burden of demonstrating that Rule 23(a)(3) is met is "fairly eas[]y . . . so long as other class members have claims similar to the named plaintiff." Deboer, 64 F.3d at 1174.

Named Plaintiffs argue that their claims are precisely aligned with those of the proposed Class because the claims are based on the same legal theory, namely that Defendants breached their ERISA fiduciary duties with regard to investment of Plan assets in Aquila Stock the Aquila Fund, and the Enron Fund.  See, e.g., Furstenau v. AT&T Corp., No. 02-5409, 2004 U.S. Dist. LEXIS 27042 (D.N.J. Sept. 2, 2004) (typicality satisfied where plaintiffs must prove common issues "of whether defendants were fiduciaries and whether they breached their fiduciary duties").  See also In re Williams, 231 F.R.D. at 422 (the focus of the inquiry is "whether the named representatives rely on a similar legal theory as will the putative class.").

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class."  The focus here is whether "(1) the class representatives have common

9

interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Paxton, 688 F.2d at 562-63.

Defendants argue that Plaintiffs cannot establish typicality and adequacy because of internal class conflicts and the existence of severance agreements releasing claims against Aquila. The Court will address these arguments in turn.

### 1. Class Conflicts Argument

Defendants argue that the proposed Class lacks typicality and adequacy because 1,067 Plan participants out of roughly 7,000 proposed Class members profited from their investments during the proposed Class period and have no interest in pursuing these claims.

At least two Circuit Courts have rejected similar class conflicts arguments in a class certification setting. In re Schering Plough, 420 F.3d 231 (3d Cir. 2005); Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995). Schering Plough rejects the contention that an action may be brought under ERISA § 502(a)(2) only if all plan participants would benefit from the litigation. In that case, the trial court held that the action could not be brought on behalf of the plan as a whole because not every plan participant was damaged by the alleged breaches of fiduciary duties. The Third Circuit reversed, holding that the fact that not all participants were affected by the alleged fiduciary breaches was irrelevant as the relevant losses were not to the individual plan participants, but to the plan.[7] Id. at 234-35.

_____The Sixth Circuit similarly rejected an attempt to raise a conflicts argument in an ERISA

---

[7] While Schering Plough is instructive regarding Defendants' attempt to raise a conflicts argument in an ERISA § 502(a)(2) context, the Court notes that the this decision did not weigh in on the propriety of the suit being maintained as a class action. Schering Plough, 420 F.3d at 242, n.9.

action due to the inclusion of class members who had no loss. <u>Kuper</u>, 66 F.3d at 1447. In <u>Kuper</u>, the court rejected the defendants' argument that a breach must harm the entire plan to give rise to ERISA liabilities, stating that such a rule would "insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants." <u>Kuper</u>, 66 F.3d at 1453.

Similarly, the Court finds that the fact that all proposed Class members may not have equally suffered from Defendants' alleged breaches of fiduciary duties does not defeat typicality. The claims in this case are brought on behalf of the Plan, and to the extent that losses may be recovered from Defendants, such recovery would be on behalf of the Plan.

The Court is similarly unpersuaded by Defendants' argument that conflicts exist between Plaintiffs and proposed Class members on the grounds that their interests diverge with respect to the particular date upon which the Aquila Fund allegedly became an imprudent investment. Defendants argue that there is a conflict between the named Plaintiffs whose recovery would be maximized if May 21, 2001 were found to be the breach date and more than 2,000 potential Class members, who would prefer a different breach date.

This argument was recently considered and rejected by the Eastern District of Virginia in <u>DeFelice v. US Airways</u>, 235 F.R.D. at 70. In <u>DeFelice</u>, defendants argued that the Plan participants were atypical in that they had divergent interests with respect to the date on which retaining defendants' stock as an investment option became imprudent. The court summarily rejected this argument:

> While it may be true that each Plan participant who invested in the Company Stock Fund has an 'optimal prudence date,' this fact alone does not defeat [Plaintiff's] typicality. This is so because, it is also true that the Plan has a single 'optimal imprudence date,' and as this lawsuit is brought on behalf of the Plan, individual participants' 'optimal imprudence dates' are irrelevant. To the extent members of the class, including the class representative, have

11

> interests with respect to this date that are slightly divergent with each other, or with the Plan itself, this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.

Id. at 79. Similarly, the court in EDS, 224 F.R.D. at 613 rejected this argument. Like the court in DeFelice, the EDS court found no conflict based on individual class members' optimal breach dates because "each class member is bringing suit on the Plan's behalf, not as an individual." Id. at 623. This Court similarly finds Defendants' "optimal breach date" argument unpersuasive. It is the Plan that will prevail or not prevail in this case, not the individual Plaintiffs. See also Summers v. UAL Corp. ESOP Comm., 2005 U.S. Dist. LEXIS 11745, Case No. 03-CV-1537 (N.D. Ill. Feb. 17, 2005) (finding typicality in a § 502(a)(2) suit because "the class members will be pursuing the same legal theories based upon Defendants' alleged misconduct" and finding untenable the defendants' contention that "the class will not be able to agree as to when the UAL stock should be sold.").

      2.    Releases

Next, Defendants argue that the proposed class lacks typicality and adequacy because some, but not all, Plaintiffs and participants signed written severance agreements releasing all claims against Aquila. During the proposed class period, Aquila engaged in significant downsizing and terminated a large number of employees as a result. During this period, many employees, including Ms. Arr, a named Plaintiff in this case, signed a severance agreement agreeing to release all claims under ERISA against Aquila. Accordingly, Defendants argue, because Ms. Arr and a number of proposed class members signed releases waiving their ERISA claims, the claims of the representative parties are not typical of the claims of the class.

As discussed throughout this Order, the instant claims in this action are brought on behalf of the Plan, pursuant to ERISA § 502(a)(2), not by ERISA plan participants seeking individual

Case 4:04-cv-00865-DW   Document 107   Filed 07/18/06   Page 12 of 21

benefits. As a matter of law, a plan participant cannot release the Plan's claims. <u>EDS</u>, 224 F.R.D. at 623-24; <u>In re Williams</u>, 231 F.R.D. at 423. While Plaintiffs state that they intend to show that the release signed by Ms. Arr is inapplicable to the ERISA claims asserted here, this issue of the validity of the releases is not properly before the Court at this time. Nor is there any indication that the issue of the validity of the releases will overwhelm the litigation. The existence of the releases does not disqualify class certification at this point, and the Court finds that the employees who signed releases should presently be included in the class. The parties are free, however, to litigate that issue and request decertification of class members who signed the releases, if such an action becomes appropriate. <u>In re Williams</u> 231 F.R.D. at 423; <u>Gen. Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 160 (1982) ("[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

 For the forgoing reasons, the Court finds that the Plaintiffs have satisfied the prerequisites of Rule 23(a).

V. <u>Class Actions Maintainable: 23(b)</u>

 In addition to satisfying the requirements of Rule 23(a), a proposed class must also satisfy one of the subsections of Rule 23(b). Plaintiffs seek certification under subsection (b)(1)(A), or in the alternative, subsection (b)(1)(B), (b)(2), or (b)(3).

A. <u>23(b)(1)(A) and 23(b)(1)(B)</u>

 To proceed as a class action under Rule 23(b)(1), a plaintiff must demonstrate that the prosecution of separate actions would create the risk of "inconsistent or varying adjudications with respect to individual members of the class," Rule 23(b)(1)(A), or the risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the

13

interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

Plaintiffs argue that 23(b)(1)(A) is the best way to manage this case and to ensure that the rights of all the Plan participants are protected. Ikon, 191 F.R.D. at 466 ("contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had ... acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.").

Alternatively, Plaintiffs argue that certification under Rule 23(b)(1)(B) is appropriate because one Plan participant's claim would, as a practical matter. be dispositive of the interests of fellow Plan participants. As the relief granted in an ERISA § 502(a)(2) enforcement claim inures to plan as a whole, Plaintiffs argue that without certification, the first suit against Defendants could be dispositive of all remaining suits, possibly leaving future plaintiffs without relief. See In re Integra Res., Inc., 354 F.3d 1246, 1264 (10th Cir. 2004); Ikon, 191 F.R.D. at 466.

Defendants argue in large part that Plaintiffs' Motion for Class certification should be denied because Plaintiffs fail to establish class cohesiveness and manageability. First, 23(b)(1) does not mandate the "total absence of individual issues," as Defendant argue. The relevant question under Rule 23(b)(1) is whether prosecution of separate actions in this case would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed Class, not whether individual issues predominate. See Forbush v. J.C. Penny Co., Inc., 994 F.2d 1101, 1105 (5th Cir. 1993) (whether common individual issues predominate is relevant only under Fed. R. Civ. P. 23(b)(3)); Allison v. Citco Petroleum Corp., 151 F.3d 402, 414, n.8 (5th Cir. 1998) (explaining that the predominance requirement does not apply to (b)(1) or (b)(2) class actions).

14

Defendants first argue that class certification is inappropriate because the individualized proofs necessary to recover on Plaintiffs' misrepresentation claim destroy class cohesiveness and undermine manageability.[8]

Plaintiffs' misrepresentation claim is predicated on the duty of loyalty under ERISA § 404(a)(1)(A). This count alleges that the Plan's fiduciaries failed to make adequate disclosures on a Plan-wide basis, and that the Plan itself was harmed by the fiduciary breach. The Complaint alleges that Defendants disseminated the same documents and information all Plan participants and failed to inform all Plan participants of material information in exactly the same way.

Defendants contend that to recover for a misrepresentation based breach of fiduciary duty, Plaintiffs must prove that (1) an ERISA fiduciary acting as a fiduciary made a misrepresentation, (2) the misrepresentation was material, and (3) the plaintiff reasonably relied on the misrepresentation to his detriment. Defendants argue that the court would have to determine individual reliance for

---

[8] As an initial matter, Defendants argue that a misrepresentation claim pursuant to ERISA § 404(a)(1)(A) cannot be brought "on behalf of the plan" under ERISA § 502(a)(2). The cases upon which Defendants rely, however, are wholly inapposite. In re Unisys II, No. 91-3076 1997 WL 732473 (E.D. Pa. Nov. 24, 1997); Williams v. Caterpillar, Inc., 944 F.2d 658 (9th Cir. 1991). In Unisys, separate and unique  misrepresentations were made to individual class members regarding their respective medical benefits. The damages expert in that case was limited to determining what damages were caused to the Plan as a result of the alleged imprudence. Regarding damages suffered by individual Plan participants, the Unisys court stated "[a] participant may bring an individual claim for fiduciary breach and damages stemming from an alleged misrepresentation . . . under ERISA § 502(a)(3), if any damages are owed to that participant, and not the plan." Id. at 28.   Accordingly, Unisys stands for the proposition that a misrepresentation claim may be brought under ERISA §  502(a)(3), not that it must be brought under ERISA § 502(a)(3) to the exclusion of ERISA §  502(a)(2).

Defendants' reliance on Williams is similarly misplaced. Williams, 944 F.2d at 658. The Williams plaintiffs brought claims against the defendants for breach of fiduciary duty, not as a class, but on behalf of themselves as individuals. The court found that a fiduciary's duty under ERISA runs to the plan as a whole, not to the individual beneficiary, and thus the plaintiffs, as individuals, failed to state a claim. Id. at 665.

15

each Plan participant on the alleged misstatements and that such a determination would require it to consider facts unique to each class member. As addressed in this Court's discussion of the Rule 23(a) commonality requirement, the relevant detrimental reliance in an ERISA § 502(a)(2) case is that of the Plan.

In support of their argument, Defendants rely on In re EDS, 224, F.R.D. 613. In EDS, the ERISA plaintiffs brought suit alleging imprudent management and misrepresentation, among other things. The court certified all the ERISA claims, except one specifically brought for misrepresentation[9]. EDS is easily distinguishable from this case. In EDS, the court found that the misrepresentation claim was brought pursuant to ERISA § 502(a)(3), alleging that the defendants breached their fiduciary duties in the way in which they treated plaintiffs as plan participants and beneficiaries. Here, the Plaintiffs' misrepresentation claim is brought under ERISA § 502(a)(2) on behalf of the Plan.

Numerous courts have found that individual issues of reliance are not an issue in an ERISA § 502(a)(2) class action claim. Rankin v. Rots, 220 F.R.D. at 511; Ikon, 191 F.R.D at. 457.

In Rankin, former employees brought an ERISA § 502(a)(2) action against the employer's

---

[9] While Defendants heavily rely on EDS in support of their argument, they fail to address the fact that the EDS court rejected many of the other arguments Defendants raise in their opposition to Plaintiffs' class certification motion. The defendants in EDS argued that (a) each class member had a unique trading pattern of their Fund assets and so made and lost money at different points in time, thereby creating claims conflicts within the class regarding when the Fund became an imprudent investment; and (b) that some class members signed releases as a condition of their severance packages, thus defeating typicality and adequacy requirements. The court considered and rejected those arguments, chiding the defendants for "miss[ing] the point that Plaintiffs have filed a derivative-type suit. Plaintiffs are not asserting claims for their own individual accounts' losses. Plaintiffs have filed suit on the Plan's behalf alleging that Defendants' conduct harmed the Plan as a whole and seeking recovery on the Plan's behalf." Id. at 623.

16

officers and directors, alleging breach of fiduciary duties in connection with investment in employer stock through the employer's 401(k) plan.  Id. at 516.  As here, plaintiffs in Rankin requested certification under Rule 23(b)(1) or (b)(2) and the defendants argued that certification was improper because of individual issues of reliance.  The Rankin court rejected Defendants' argument, stating:

> [Plaintiffs's] claims relate to defendants['] unitary actions with regard to the Plan. Defendants treated the entire class identically.  Although there may be factual differences as to whether . . . a class member relied on any alleged misrepresentation, the alleged misrepresentations are alleged to have been made to the entire class of participants.  This is not a case where defendants are alleged to have had individualized communications with a participant.  Rather, this is a case where defendants' uniform communications with its participants . . . form[] the basis for [Plaintiffs'] claims.  Thus, individualized issues do not predominate.

Id. at 523.  See also Ikon, 191 F.R.D. 457.

Similarly, Plaintiffs here allege that the Defendants made misrepresentations to the entire class.  Here the Plan has one single claim against the fiduciaries for failing to fully and accurately disclose information to Plan participants.  Accordingly, the Court finds that issues of reliance do not undermine the manageability or cohesiveness of this case.

Defendants next argue that they have an affirmative defense under ERISA § 404(c) which undercuts class cohesiveness.  ERISA § 404(c)(1)(B) exempts a fiduciary from liability arising from a participant's investment decisions, providing that if the participant directs the investments in his account, then "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." ERISA § 404(c)(1)(B).  To the extent that the Court must apply the 404(c) defense to individual Plaintiffs, Defendants argue, class certification is inappropriate.

Parties dispute whether an ERISA § 404 defense will, in fact, be available in this case.  The

17

Court notes that the merits of the defense are not properly before the Court at this time.  In re Rogers, 2006 WL 794734 (N.D. Ill. March 22, 2006); In re Williams, 231 F.R.D. at 421.  Nor is there any indication in this case that the 404(c) defense threatens to overshadow the merits of the case. Rogers, 2006 WL 794734; In re Williams, 231 F.R.D. at 421-22; In re CMS Energy Erisa Litig., 225 F.R.D. 539, 543-44 (E.D. Mich. 2004).

Overall, the Court finds that prosecution of separate actions in this case would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed Class and that certification under 23(b)(1)(A) is therefore appropriate.

B.    Rule 23(b)(2) and 23(b)(3)

Plaintiffs also argue for certification pursuant to Rule 23(b)(2) because Plaintiffs' claims are based on conduct by Defendants that is generally applicable on a class-wide basis.  Class certification under 23(b)(2) is appropriate "if classwide injunctive relief is sought when the defendant 'has acted or refused to act on grounds generally applicable to the class.'" DeBoer, 64 F.3d at 1175 (quoting Fed. R. Civ. P. 23(b)(2)).  Plaintiffs argue that the conduct they allege is generally applicable on a class-wide basis because the alleged fiduciary breaches affected all of the Plan participants and beneficiaries. Defendants argue that Plaintiffs seek primarily monetary, not equitable, relief, and therefore certification under Rule 23(b)(2) is improper.  In light of finding that certification under Rule 23(b)(1) is proper, the Court declines to address this argument.  See Gruby v. Brady, 838 F.Supp. 820, 828, n.9 (S.D.N.Y. 1993).

Plaintiffs also claim in their Consolidated Amended Petition that certification under 23(b)(3) is appropriate.  Plaintiffs, however, appear to abandoned this theory for certification as they failed to brief it in their memorandum in support of their motion for class certification.  While Plaintiffs

18

touched briefly upon Rule 23(b)(3) in the class certification hearing, the Court considers that Plaintiffs have abandoned the theory and the argument will thus not be considered.

VI.     Rule 23(g)

An order certifying a class action must also appoint class counsel that will adequately represent the interests of the class.  Fed. R. Civ. P. 23(c)(1)(B).  Federal Rule of Civil Procedure 23(g) requires that class counsel must fairly and adequately represent the interests of the class.  The court must consider the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsel's knowledge in the applicable law, and the resources counsel will commit to representing th class.  Fed. R. Civ. P. 23(g)(1)(C).  See also In re Universal Serv. Fund Tel. Billing Practices Litig., 219 F.R.D. 661, 684 (D. Kan. 2004).

Plaintiffs argue that they have retained counsel who are highly qualified and experienced in class action and ERISA litigation and capable of conducting this litigation and protecting the interest of the proposed Class.  Plaintiffs seek to have the following law firms be appointed as Class Counsel:  Norris, Keplinger & Herman LLC; the Law Offices of Max D. Liefer, P.C.; Schatz & Nobel; Squitieri & Fearon, LLP; the Nygard Law Firm; and Wolf Haldenstein Adler Freeman & Herz LLP.

On November 15, 2004, Plaintiffs filed an Unopposed Motion for Consolidation and Appointment of Lead Counsel.  (Doc. 10).  Plaintiffs' Motion moved the Court to (1) appoint Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel for Plaintiffs; (2) appoint Norris Keplinger & Herman LLC as liason counsel for Plaintiff; (3) appoint an executive committee consisting of the chair of the committee, Wolf Haldenstein, and members Schatz & Nobel, Squitieri & Fearon, LLP,

and the Nygard Law Firm. This Court declined to grant Plaintiffs' request to appoint Wolf Haldenstein as Lead Counsel and denied designation of Plaintiffs' Executive Committee and appointed Norris Keplinger & Herman LLC as Lead Counsel. (Doc. 22). At that time, however, the Court invited Plaintiffs to file another request to appoint a different Lead Counsel and/or renew their request to designate an Executive Committee, for good cause shown. At this stage in the proceedings, Plaintiffs have moved, without a showing of good cause, for the appointment of the same laundry list of law firms, namely, Norris, Keplinger & Herman LLC; the Law Offices of Max D. Liefer, P.C.; Schatz & Nobel; Squitieri & Fearon, LLP; the Nygard Law Firm; and Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel.

The Court hereby Orders Plaintiffs to show cause, within ten (10) days of the date of this Order, why Norris, Keplinger & Herman LLC; the Law Offices of Max D. Liefer, P.C.; Schatz & Nobel; Squitieri & Fearon, LLP; the Nygard Law Firm; and Wolf Haldenstein Adler Freeman & Herz LLP should be appointed as Class Counsel. Plaintiffs shall include a detailed plan outlining the organization and litigation structure of the case going forward and shall provide information on a proposed Executive Committee, if any, the designation of Lead Counsel, and terms for attorney fees and nontaxable costs. Plaintiffs shall also include a proposed budget for the proceedings going forward. The Court will, using this information, evaluate the merits of this plan and thereafter rule on Plaintiffs' Motion to appoint Class Counsel.

VII.    Conclusion

For the forgoing reasons, it is hereby ORDERED:

1.    This action is certified under Federal Rule of Civil Procedure 23(c)(1) on behalf of a class ("Class") consisting of participants and beneficiaries of the Aquila, Inc. ("Aquila") Retirement Investment Plan for whose individual accounts the Plan

purchased an/or held investments in Aquila common stock, the Aquila Common Stock Fund, and a fund consisting almost entirely of Enron Corporation common stock from January 1, 1999 to May 5, 2004. Excluded from the Class are Defendants herein, Aquila's Board of Directors throughout the Class Period, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest;

2.      Pursuant to Federal Rule of Civil Procedure 23, Richard L. Itteilag, Barry T. O'Brien; Sharon Arr; Christie Wolf; John Pribyl, Sr.; Robert C. Goodson; Michael Tylutki; and Michael Reinhardt are appointed to be representatives of the class;

3.      Mr. Smith is directed to file a notice of withdrawal as Class Representative within ten (10) days of the date of this Order;

4.      The Court hereby Orders Plaintiffs to show cause, within ten (10) days of the date of this Order, why Norris, Keplinger & Herman LLC; the Law Offices of Max D. Liefer, P.C.; Schatz & Nobel; Squitieri & Fearon, LLP; the Nygard Law Firm; and Wolf Haldenstein Adler Freeman & Herz LLP should be appointed as Class Counsel. Plaintiffs shall include a detailed plan outlining the organization and litigation structure of the case going forward and shall provide information on a proposed Executive Committee, if any, the designation of Lead Counsel, terms for attorney fees and nontaxable cases, and a budget;

5.      Plaintiffs' Motion for Leave to Exceed the Page Limitation in Their Reply Memorandum of Law on Class Certification (Doc. 87) is GRANTED.

IT IS SO ORDERED.

                                                        /s/ DEAN WHIPPLE
                                                        Dean Whipple
                                                        United States District Judge

DATE:   July 18, 2006