# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

IN RE AQUILA ERISA LITIGATION ·

)
)
)

Case No. 04-cv-00865 (DW)

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT (*"Settlement Agreement"*) is entered into by and between *Named Plaintiffs* in the above-captioned *Action* for themselves and on behalf of the *Class*, on the one hand, and the *Defendants,* on the other hand, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate.

1.  Definitions.

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1.  *"Action"* shall mean: In Re Aquila ERISA Litigation, No. 4:04-cv-00865 (DW), pending in the United States District Court for the Western District of Missouri, and any and all cases now or hereafter consolidated therewith.

1.2.  *"Agreement Execution Date"* shall mean the date on which this *Settlement Agreement* is fully executed, as provided in Section 13.13.

1.3.  *"Alleged Net Losses"* shall have the meaning set forth in Section 9.5.

1.4.  *"Aquila"* shall mean Aquila, Inc. and each of its predecessors.

1.5.  *"Claims"* shall have the meaning set forth in Section 3.2.

1.6.  *"Class"* shall mean: All *Participants* and beneficiaries of the Aquila, Inc. Retirement Investment Plan (the *"Plan"*) for whose individual accounts the *Plan* purchased and/or held investments in *Aquila* common stock, the *Aquila* Common Stock Fund, and a fund consisting almost entirely of Enron Corporation common stock from January 1, 1999, to May 5, 2004. Excluded from the *Class* are *Defendants*, *Aquila's* Board of Directors throughout the *Class Period*, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any *Defendant* has or had a controlling interest.

1.7.  *"Class Counsel"* shall mean: *Lead Counsel*; The Nygaard Law firm; Norris & Keplinger, L.L.C.; Schatz & Nobel; Squitieri & Fearon, L.L.P.; and the Law Offices of Max D. Leifer, P.C.

1.8.  *"Class Notice"* shall mean: the form of notice appended as Exhibit A to the

480295.6
2526157v2

proposed *Preliminary Approval Order* attached hereto as Exhibit 1.

1.9.    "*Class Period*" shall mean: January 1, 1999, through and including May 5, 2004.

1.10.    "*Class Settlement Amount*" shall have the meaning set forth in Section 7.1.2.

1.11.    "*Company*" shall mean: Aquila, Inc., and each of its predecessors.

1.12.    "*Complaint*" shall mean: the Consolidated Amended Complaint filed in the *Action* on March 21, 2005.

1.13.    "*Court*" shall mean: the United States District Court for the Western District of Missouri.

1.14.    "*Defendants*" shall mean: the *Company*; Richard C. Green, Jr.; Robert K. Green; Avis Green Tucker; Stanley O. Ikenberry; Herman Cain; Irvine O. Hockaday, Jr.; John R. Baker; L. Patton Kline; Robert F. Jackson, Jr.; Shirley Ann Jackson; Ronald T. LeMay; Gerald L. Shaheen; Michael M. Crow; Phil Beyer; Randal P. Miller; and Heidi E. Hutter.

1.15.    "*Defendants' Counsel*" shall mean: Shook, Hardy & Bacon LLP.

1.16.    "*ERISA*" shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.17.    "*Escrow Agent*" shall mean the firm of Wolf Haldenstein Adler Freeman & Herz LLP.

1.18.    "*Fairness Hearing*" shall have the meaning set forth in Section 2.1.3.

1.19.    "*Final*" shall mean: with respect to any judicial ruling or order, that the period for any appeals or petitions for certiorari ("*Appeal Proceeding*") has expired without the initiation of an *Appeal Proceeding*, or, if an *Appeal Proceeding* has been timely initiated, that there has occurred a full and final disposition of any such *Appeal Proceeding* without a reversal or any material modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand.  Notwithstanding any other provision hereof, the *Final Order* shall be deemed *Final* at the time set forth in the preceding sentence even if, at that time, (i) the *Court* has not yet entered an order regarding the *Plan of Allocation* or the award of legal fees and expenses or an award of compensation to *Named Plaintiffs*, (ii) an order regarding the *Plan of Allocation* or the award of legal fees and expenses or an award of compensation to *Named Plaintiffs* has been entered but has not yet become *Final*, or (iii) an order regarding the *Plan of Allocation* or the award of legal fees and expenses or an award of compensation to *Named Plaintiffs* has been entered but is modified following an *Appeal Proceeding*.

1.20.    "*Final Order*" shall have the meaning set forth in Sections 2.1.3 and 2.2.

1.21.    "*Financial Institution*" shall have the meaning set forth in Section 7.1.1.

1.22.    "*Independent Fiduciary*" shall mean a fiduciary of the *Plan* with respect to this

2

*Settlement* whose function is described in Section 2.4.

1.23. *"Lead Counsel"* shall mean: Wolf Haldenstein Adler Freeman & Herz LLP.

1.24. *"Named Plaintiffs"* shall mean: Richard L. Itteilag; Barry T. O'Brien; Sharon Arr; Christine Wolf; John F. Pribyl, Sr.; Robert C. Goodson; Michael Tylutki; and Michael Reinhardt.

1.25. *"Net Proceeds"* shall have the meaning set forth in Section 9.5.

1.26. *"Participant"* shall mean: any individual who was a participant, as the term participant is defined in 29 U.S.C. § 1002(7), in the *Plan* at any time during the *Class Period.*

1.27. *"Parties"* shall mean: the *Plaintiffs* and the *Defendants*.

1.28. *"Person"* shall mean: an individual, partnership, corporation, estate, trust, governmental entity or any other form of entity or organization.

1.29. *"Plaintiffs"* shall mean: *Named Plaintiffs* and each member of the *Class.*

1.30. *"Plaintiff Releasees"* shall have the meaning set forth in Section 3.3.

1.31. *"Plan"* shall mean: the Aquila, Inc. Retirement Investment Plan and all predecessor plans, including the UtiliCorp United Inc. Retirement Investment Plan and the UtiliCorp United Inc. Savings Plan, and any trust created under the forgoing plans.

1.32. *"Plan of Allocation"* shall mean: the plan of allocation approved by the *Court* as contemplated by Section 9.5.

1.33. *"Preliminary Approval Order"* shall have the meaning set forth in Section 2.1.1.

1.34. *"Preliminary Approval Motion"* shall have the meaning set forth in Section 2.1.1.

1.35. *"Released Claims"* shall have the meaning set forth in Section 3.2.

1.36. *"Releasees"* shall mean: the *Defendants*, and any *Person* who served as a trustee or named or functional fiduciary of the *Plan*, together with, for each of the foregoing, any predecessors, successors-in-interest, direct or indirect parents and subsidiaries, insurers, and any *Person* that controls, is controlled by, or is under common control with any of the foregoing, as well as any present and former *Representatives* of any of the foregoing.

1.37. *"Releases"* shall mean the releases set forth in Section 3.

1.38. *"Representatives"* shall mean: representatives, attorneys, agents, directors, officers, or employees.

1.39. *"Settlement"* shall mean: the settlement to be consummated under this *Settlement Agreement* pursuant to the *Final Order.*

1.40. *"Settlement Agreement"* shall mean this Class Action Settlement Agreement.

3

480295.6
2526157v2

1.41.  *"Settlement Fund"* shall have the meaning set forth and described in Section 7.1.

1.42.  *"Signers"* shall have the meaning set forth and described in Section 7.1.1.

2.    Conditions to Finality of the *Settlement*.

This *Settlement* shall be final when each of the following conditions in Sections 2.1 through 2.4 have been satisfied or waived.

2.1.  *Court* Approval. The *Settlement* shall have been approved by the *Court*, as provided for in this Section 2. *Plaintiffs* shall move the *Court* for an order and judgment approving this *Settlement Agreement* and the *Settlement* contemplated hereunder. The *Plaintiffs* shall recommend to the *Court* that such order and judgment be entered, and the *Defendants* will not object to such recommendation. The *Parties* shall cooperate in good faith, by taking all steps and efforts contemplated by this *Settlement Agreement,* such as all steps and efforts reasonably necessary to secure preliminary and final approval by the *Court* of the *Settlement,* and any other steps and efforts which may become necessary by order of the *Court* (unless such order materially modifies the terms of this *Settlement Agreement*), to carry out this *Settlement Agreement,* including the following:

2.1.1.  Motion for Preliminary Approval of *Settlement*. As soon as reasonably possible upon the full execution of this *Settlement Agreement* by the *Parties,* the *Plaintiffs* will file a motion ("*Preliminary Approval Motion*") with the *Court* for an order (the "*Preliminary Approval Order*") substantially in the form annexed hereto as Exhibit 1.

2.1.2.  Issuance of *Class Notice*. On the date and in the manner set by the *Court* in its *Preliminary Approval Order,* the *Plaintiffs* shall cause the *Class Notice* to be transmitted in the form and manner approved by the *Court* as directed in the *Preliminary Approval Order.*

2.1.3.  The *Fairness Hearing*. The *Preliminary Approval Order* shall set forth the hearing date upon which the *Court* will review and/or determine the fairness of the *Settlement Agreement* (the *"Fairness Hearing"*). On or after the date of the *Fairness Hearing,* the *Court* will determine: (i) whether to enter judgment finally approving the *Settlement* (which judgment is referred to herein as the *"Final Order");* (ii) whether the distribution of the *Settlement Fund* as provided in the *Plan of Allocation* should be approved; and (iii) what legal fees, compensation, and expenses should be awarded to *Class Counsel* and to *Named Plaintiffs,* as contemplated by Section 10 of this *Settlement Agreement.*

2.2.  Finality of *Final Order*. The *Court* shall have entered the Final Order and Judgment (the *"Final Order"*) substantially in the form attached hereto as Exhibit 2, as more fully discussed in Section 2.1.3, and the *Final Order* shall have become *Final,* as provided in Section 1.19.

4

480295.6
2526157v2

2.3.    Funding of *Class Settlement Amount*. The *Defendants* shall have caused the *Class Settlement Amount* to be deposited at the time prescribed by, and otherwise as provided for in, Section 7.1.

2.4.    *Settlement* Authorized by *Independent Fiduciary*. Subject to the *Company's* unilateral right to waive this contingency, the *Settlement* is contingent upon an *Independent Fiduciary*, at least ten (10) days prior to the *Fairness Hearing* (i) approving the *Settlement* and authorizing the *Settlement* in accordance with Prohibited Transaction Class Exemption 2003-39, or (ii) finding that the *Settlement* does not constitute a prohibited transaction under *ERISA* § 406(a). The *Company* shall determine whether it requires either or both of (i) or (ii). The *Company* will move promptly to seek to obtain this approval or authorization and will bear all costs associated with seeking such approval or authorization. If the *Company* waives this condition, then the *Settlement* shall become final if all other conditions in Section 2 are satisfied or waived.

3.    *Releases*.

3.1.    *Releases of the Releasees*. Subject to Section 11 herein, effective upon the entry of the *Final Order* by the *Court* and regardless of whether the *Final Order* has become *Final*, *Plaintiffs* on behalf of themselves and on behalf of the *Plan* and the *Class* absolutely and unconditionally release and forever discharge the *Releasees* from the *Released Claims* that *Plaintiffs*, the *Plan* and the *Class* directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have, except that the *Releases* under this Section 3.1 shall not include *Claims* relating to the covenants or obligations set forth in this *Settlement Agreement* or the Protective Order/Confidentiality Agreement Concerning Discovery Information. Notwithstanding any other provision hereof, the *Releases* set forth in Sections 3.1, 3.2, and 3.3 of this *Settlement Agreement* will remain in effect during the pendency of any *Appeal Proceeding*. Only if any *Appeal Proceeding* results in a reversal or vacation of the *Final Order* will the *Releases* set forth in Sections 3.1, 3.2, and 3.3 of this *Settlement Agreement* become void and lose their effect.

3.2.    *Released Claims*. The *Released Claims* shall be: any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), whether accrued or not, whether already acquired or acquired in the future, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise (collectively, "*Claims*"), which were or could have been asserted in the *Complaint* by or on behalf of the *Plan* or *Participants* concerning the matters alleged in the *Complaint*, including but not limited to any action or inaction relating to *Company* stock held in the *Plan;* or *Claims* that have been or could have been asserted in the *Complaint* on behalf of *Plaintiffs* and members of the *Class* individually or collectively concerning the matters alleged in the *Complaint,* including all *Claims* based on the same facts alleged in the *Complaint* arising under any law or act governing the regulation of securities; or *Claims* that would be barred by principles of *res judicata* or collateral estoppel had the *Claims* asserted in the *Complaint* been fully litigated and resulted in a final judgment or order. The *Parties* understand and agree that the *Releases* to be given pursuant to this *Settlement Agreement* shall include *Released Claims* that are not known or suspected to exist

5

at the time such *Releases* are given, and pursuant to Section 3.4, *Plaintiffs* explicitly acknowledge and waive any and all rights they may have under statutory provisions that protect unknown *Claims*.

3.3.    *Defendants' Releases of Named Plaintiffs, the Class and Class Counsel*.  Subject to Section 11 herein, effective upon the entry of the *Final Order* by the *Court* and regardless of whether the *Final Order* has become *Final*, the *Defendants* absolutely and unconditionally release and forever discharge the *Named Plaintiffs*, the *Class* and *Class Counsel* (collectively, the *"Plaintiff Releasees"*) from any and all *Claims* relating to the institution or prosecution of the *Action* or the settlement of any *Released Claims*, except that the *Releases* under this Section 3.3 shall not include *Claims* relating to the covenants or obligations set forth in this *Settlement Agreement* or the Protective Order/Confidentiality Agreement Concerning Discovery Information.

3.4.    Scope of *Releases*.

3.4.1.  The *Releases* set forth in this Section 3 are not intended to include the release of any rights or duties arising out of this *Settlement Agreement*, including the express warranties and covenants in this *Settlement Agreement*.

3.4.2.  The *Parties* intend and agree that the *Releases* granted in this Section 3 shall be effective as a bar to any and all currently unsuspected, unknown, or partially known *Claims* within the scope of their express terms and provisions.  Accordingly, the *Named Plaintiffs* hereby expressly waive, on their own behalf and on behalf of all members of the *Class*, and the *Defendants* hereby expressly waive, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction.  Section 1542 reads in pertinent part:

> A general release does not extend to claims that the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

3.4.3.  The *Named Plaintiffs*, on their own behalf and on behalf of all members of the *Class*, and the *Defendants* each hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction was separately bargained for and that neither the *Named Plaintiffs*, on the one hand, nor the *Defendants*, on the other, would enter into this *Settlement Agreement* unless it included a broad release of unknown *Claims*.  The *Named Plaintiffs* on their own behalf and on behalf of all members of the *Class*, and the *Defendants* each expressly agree that all *Release* provisions in this *Settlement Agreement* shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, and future *Claims*, demands, and causes of action. The *Named Plaintiffs* assume for themselves, and on behalf of the *Plan* and the *Class*, and the *Defendants* assume for themselves, the risk of his, her, their or its

6

480295.6
2526157v2

respective subsequent discovery or understanding of any matter, fact, or law, that if now known or understood, would in any respect have affected his, her, their or its entering into this *Settlement Agreement.*

4. <u>Covenants.</u>

The *Parties* covenant and agree as follows:

4.1. <u>Covenants Not to Sue.</u>

4.1.1. The *Plaintiffs* covenant and agree on their own behalf and on behalf of the *Plan* and the *Class*: (i) not to file against any *Releasee* or the *Plan* any additional *Claim* based on or arising from any *Released Claim*, or refile the *Claim* brought in this *Action*; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such *Claims* against any of the respective *Releasees*.

4.1.2. The *Defendants* covenant and agree (i) not to file against any *Plaintiff Releasee* or the *Plan* any *Claim* released under Section 3.3; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such *Claims* against any of the respective *Plaintiff Releasees*.

4.2. <u>Taxation of *Settlement Fund.*</u> *Plaintiffs* acknowledge that the *Releasees* have no responsibility for any taxes due on the earnings of the *Settlement Fund* or on any amounts that the *Plaintiffs* or *Class Counsel* receive from the *Settlement Fund,* as further discussed in Sections 7.1.4 and 7.1.5. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due. The *Company* will direct the *Plan* administrator and trustee to treat the amounts allocated pursuant to the *Plan of Allocation* as restorative payments consistent with Revenue Ruling 2002-45, 2002-2 C.B 116, 2002 WL 137852.

4.3. <u>Cooperation.</u> The *Parties* shall cooperate in good faith, including by taking all steps and efforts contemplated by this *Settlement Agreement* and all steps reasonably necessary to secure preliminary and final approval by the *Court* of the *Settlement* as set forth above in Section 2.1. The *Parties* shall not do anything or take any position inconsistent with obtaining a prompt *Final Order* approving the *Settlement* unless expressly permitted by this *Settlement Agreement.*

4.3.1. The *Company* shall, within ten (10) business days from the entry of the *Preliminary Approval Order,* use its best efforts to provide *Lead Counsel* with the names and last known addresses of members of the *Class,* as available, in electronic format; and shall timely respond to reasonable written requests for accessible data in the *Company's* custody or control necessary to implement, enforce, or determine the administrability of a proposed *Plan of Allocation.* No charge against the *Settlement Fund* shall be made by the *Company*, directly or indirectly, for gathering or providing such information. The *Parties* acknowledge that any information provided by the *Defendants* to *Lead Counsel* may be used only to deliver the *Class Notice* and/or implement the *Settlement*, including the *Plan of Allocation.* *Plaintiffs* will share with the *Company* any information they gather about

480295.6
2526157v2

Case 4:04-cv-00865-DW   Document 135-3   Filed 07/23/07   Page 7 of 48

*Persons* to whom the *Class Notice* is to be sent, whether developed from the information provided by the *Company* as discussed in this Section 4.3.1 or otherwise.

4.3.2. The *Defendants* may, at their discretion and upon *Lead Counsel's* request, participate in issuing *Class Notice,* and *Defendants* will be reimbursed from the *Settlement Fund* for any such efforts.

4.4.    Request by the *Court* or the *Named Plaintiffs* for Information.  If the *Court* deems it necessary for the *Parties* to supply any information as part of the *Court's* review of the *Settlement Agreement*, the *Parties* will reasonably expedite provision of such information as directed by the *Court*.  If the *Named Plaintiffs* deem it necessary for the *Defendants* to supply information in order to respond to any timely filed objection, the *Defendants* will reasonably expedite provision of such information.  Any disputes regarding requests for information by the *Parties* shall be decided by the *Court*.

5.    Representations and Warranties.

5.1.    *Parties'* Representations and Warranties.   The *Parties*, and each of them, represent and warrant as follows, and each *Party* acknowledges that each other *Party* is relying on these representations and warranties in entering into this *Settlement Agreement:*

5.1.1. That they have conducted discovery and have diligently litigated this case pursuant to the *Court's* orders; that they are voluntarily entering into this *Settlement Agreement* as a result of arm's-length negotiations among their counsel; that in executing this *Settlement Agreement* they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and *Claims* hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this *Settlement Agreement* by any representations, statements, or omissions pertaining to any of the foregoing matters by any *Party* or by any *Person* representing any *Party* to this *Settlement Agreement*.  Each *Party* assumes the risk of mistake as to facts or law.

5.1.2. That they have carefully read the contents of this *Settlement Agreement*, and this *Settlement Agreement* is signed freely by each *Person* executing this *Settlement Agreement* on behalf of each of the *Parties*. The *Parties*, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement*, and all of the matters pertaining thereto, as he, she, or it deems necessary.

5.2.    Signatories' Representations and Warranties.    Each *Person* executing this *Settlement Agreement* on behalf of any other *Person* does hereby personally represent and warrant that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each *Party* whom such individual represents or purports to represent.

8

480295.6
2526157v2

6. <u>No Admission of Liability.</u>

The *Parties* understand and agree that this *Settlement Agreement* embodies a compromise settlement of disputed *Claims*, and that nothing in this *Settlement Agreement*, including the furnishing of consideration for this *Settlement Agreement*, shall be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Defendants*, or give rise to any inference of fiduciary status under *ERISA* or wrongdoing or admission of wrongdoing or liability in this or any other proceeding. This *Settlement Agreement* and the payments made hereunder are made in compromise of disputed *Claims* and are not admissions of any liability of any kind, whether legal or factual. Moreover, the *Defendants* specifically deny any such liability or wrongdoing. Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this *Settlement Agreement* or arising out of or relating to the *Final Order*.

7. <u>The *Settlement Fund* and Deliveries into the *Settlement Fund*.</u>

7.1. <u>The *Settlement Fund*.</u>

7.1.1. Within five (5) business days after entry the of the *Preliminary Approval Order*, the *Escrow Agent* shall establish at a federally insured financial institution (the "*Financial Institution*") a settlement fund account (the "*Settlement Fund*"). *Lead Counsel* shall promptly notify the other *Parties* of the establishment of the *Settlement Fund*. The monies in the *Settlement Fund* shall be considered a common fund created as a result of the *Action*. All funds held by the *Escrow Agent* in the *Settlement Fund* pursuant to this *Settlement Agreement* shall be deemed and considered to be in the legal custody of the *Court* until such time as such funds shall be distributed pursuant to further order(s) of the *Court* or pursuant to the terms of this *Settlement*. *Lead Counsel* shall designate at least one *Person* with signature authority over the *Settlement Fund* (the "*Signers*"), and shall direct the *Financial Institution* to make distributions from the *Settlement Fund* only in accordance with this *Settlement Agreement* upon written direction from each *Signer*.

7.1.2. Within ten (10) business days after notification of the establishment of the *Settlement Fund*, the *Defendants* shall cause the *Escrow Agent* to be paid the aggregate sum of $10,500,000 (the "*Class Settlement Amount*"), to be deposited in the *Settlement Fund*.

7.1.3. Except as provided herein, the *Settlement Fund* shall bear interest and shall be invested only in United States Treasury securities and/or securities of United States agencies backed by the full faith and credit of the United States Treasury, and mutual funds or money market accounts that invest exclusively in the foregoing securities.

7.1.4. The *Settlement Fund* shall be structured and managed to qualify as a qualified settlement fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder. The *Parties* shall not take a position in any filing or before any tax authority inconsistent with such treatment. The *Settlement Fund* will pay any federal, state, and local taxes that may apply to the income of the *Settlement Fund*.

9

The *Escrow Agent* shall arrange for the preparation and filing of all tax reports and tax returns required to be filed by the *Settlement Fund* and for the payment from the *Settlement Fund* of any taxes owed. The *Escrow Agent* shall be authorized to retain a certified public accounting firm for those purposes. All taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund* shall be paid solely out of the *Settlement Fund*, shall be considered a cost of administration of the *Settlement*, and shall be timely paid without further order of the *Court*. All fees and expenses of the *Financial Institution*, and of professional advisors engaged by the *Financial Institution* in connection with the *Settlement Fund*, shall be funded solely from the *Settlement Fund*, shall be considered a cost of administration of the *Settlement*, and shall be paid without further order of the *Court*.

7.1.5. The *Parties* acknowledge and agree that the *Releasees* shall have no authority, control, or liability in connection with the design, management, administration, investment, maintenance, or control of the *Settlement Fund*, or for any expenses the *Settlement Fund* may incur or for any taxes that may be payable by the *Settlement Fund* or any distributee therefrom.

7.2.     Sole Monetary Contribution. The *Class Settlement Amount* shall be the full and sole monetary contribution made by or on behalf of the *Defendants* in connection with the *Settlement* effected between the *Named Plaintiffs* and the *Defendants* under this *Settlement Agreement*. The *Class Settlement Amount* specifically covers any claims for costs and attorneys' fees by the *Named Plaintiffs*, on their behalf or on behalf of the *Class*, as well as any costs or expenses of the *Class Notice*. Except as otherwise specified in this *Settlement Agreement*, the *Parties* shall bear their own costs and expenses (including attorneys' fees) in connection with effectuating the *Settlement* and securing all necessary *Court* orders and approvals with respect to the same.

7.3.     Non-Cash *Settlement* Consideration.

7.3.1. Independent Investment Advisor.     The *Company* agrees to retain an independent advisor or an independent third-party fiduciary for three years to advise the *Plan* fiduciaries regarding the *Plan's* investment in *Company* stock.

7.3.2. No Restriction on Sale of *Company* Stock. The *Company* agrees to take no action to restrict *Participants'* ability to sell *Company* stock.

7.3.3. *Plan* Amendments. The *Company* agrees to cause the fiduciaries to enact the following *Plan* amendments, which will become effective as of the date the *Final Order* is entered by the *Court*:

7.3.3.1.     Fiduciary Structure.     The *Plan's* fiduciary structure will be identified in *Plan* documents and Summary *Plan* Descriptions such that the individuals or entities who exercise fiduciary responsibility over the *Plan's* assets are clearly identifiable.

10

7.3.3.2 <u>Accelerated Vesting</u>. *Participants* shall become immediately 100% vested in their existing account balances, and shall be 100% vested in any future employer matching or discretionary contributions as of the date such contributions are made by the *Company*. This amendment does not affect former *Participants* who have received a complete distribution of their vested benefits prior to the date the *Preliminary Approval Order* is entered, and does not obligate the *Plan* to retroactively reinstate any former *Participant*'s non-vested account(s), which were forfeited by the *Plan* in the ordinary course.

8.    <u>Mitigation.</u>

The *Parties* acknowledge that after this *Action* was filed, the *Company* began providing employees and retirees with benefits that the *Parties* agree mitigate a significant portion of the alleged damages in this *Action*. These benefits include:

8.1.    <u>Pension Plan Enhancements</u>. The *Company* has enhanced benefits under its defined benefit pension plan by eliminating a preexisting 30-year service cap and by basing pension accruals upon total compensation (including base salary and bonus) rather than upon base salary only.

8.2.    <u>Retiree Medical Premiums</u>. The *Company* has enhanced its retiree medical benefits by offering qualifying retirees a credit in the amount of [$1,500 x the employee's number of years of service] to be used toward the payment of medical premiums.

8.3.    <u>Free Financial Planning</u>. The *Company* has enhanced its employee benefits by providing employees with free financial planning, which includes access to financial planners via a toll-free telephone number and access to an interactive financial planning website.

9.    <u>Disbursements from the *Settlement Fund*.</u>

*Lead Counsel* may direct the *Financial Institution* to disburse money from the *Settlement Fund* as follows:

9.1.    <u>Expenses of *Class Notice*</u>. As approved by the *Court* for the payment of costs of the *Class Notice*.

9.2.    <u>For Attorneys' Fees and Expenses</u>. As provided in Section 10.2 herein.

9.3.    <u>For the *Named Plaintiffs*' compensation</u>. As provided in Section 10.2 herein.

9.4.    <u>For taxes and expenses of the *Settlement Fund*</u>. As provided in Section 7.1.4 herein.

9.5.    <u>To Effectuate the *Plan of Allocation*</u>. *Plaintiffs* shall propose to the *Court*, and the *Court* shall approve in its discretion, a plan of allocation ("*Plan of Allocation*") that shall provide for the allocation of the *Settlement Fund* net of the disbursements called for in Sections 9.1, 9.2, 9.3, 9.4, and 9.5.1 ("*Net Proceeds*"). Generally, the *Plan of Allocation* will allocate the *Net Proceeds*, less *Plan* expenses reasonably and necessarily incurred in implementing the *Plan of*

11

Allocation, among *Plan Participants* and beneficiaries in proportion to their alleged losses ("*Alleged Net Losses*"), as directed by the *Court*, and shall not require the *Company* or the *Plan* to distribute de minimis amounts under this section. The *Plan of Allocation* is a matter separate and apart from the *Settlement* between the *Parties*, and no decision by the *Court* concerning the *Plan of Allocation* shall affect the validity of the *Settlement Agreement* or finality of the *Settlement* in any manner. *Plaintiffs'* costs and fees associated with developing and implementing the *Plan of Allocation* shall come solely from the *Settlement Fund*, and the *Releasees* shall not bear any independent obligation to pay those costs and fees. At the request of *Lead Counsel*, *Defendants* will consult with and provide *Lead Counsel* with information related to any *Plan of Allocation* being considered by *Lead Counsel*. Nothing herein shall constitute approval or disapproval of the *Plan of Allocation* by the *Releasees*.

      9.5.1. To the extent that the *Company*, JP Morgan Retirement Plan Services, LLC and/or Union Bank of California, N.A. are required or requested to perform services in connection with developing, administering, or implementing the *Plan of Allocation*, all reasonable costs and expenses up to $50,000 shall be paid from the *Settlement Fund*, and any additional costs and expenses shall be compensated by the *Company*.

10.    Attorneys' Fees and Expenses and Compensation to *Named Plaintiffs*.

      10.1.  Application for Attorneys' Fees and Expenses and for Compensation to *Named Plaintiffs*. As provided in Section 2.1.3, and pursuant to the common fund doctrine and/or any applicable statutory fee provision, *Class Counsel* may apply to the *Court* for an award of attorneys' fees not to exceed 33% of the *Class Settlement Amount* and for reimbursement of reasonable costs actually incurred, up to $500,000, to be paid solely from the *Settlement Fund*. *Class Counsel* also may apply to the *Court* for compensation to *Named Plaintiffs* as consideration for their time and effort devoted to the prosecution of the *Action* on behalf of the *Class*, payable solely from the *Settlement Fund*. *Class Counsel* and *Named Plaintiffs* shall be entitled to receive such attorneys' fees and expenses and compensation from the *Settlement Fund* to the extent awarded by the *Court*. The *Defendants* shall not oppose *Lead Counsel's* application for attorneys' fees or the allocation of any award.

      10.2.  Disbursement of Attorneys' Fees and Expenses and *Named Plaintiff* Compensation. Immediately after the *Court's* execution of the *Final Order* and the entry of an order allowing the payment of attorneys' fees and expenses from the *Settlement Fund* and/or an order allowing the payment of *Named Plaintiff* compensation from the *Settlement Fund*, the *Escrow Agent* may instruct the *Financial Institution* in writing to disburse such payments from the *Settlement Fund*, which the *Financial Institution* shall do within five (5) business days of receiving such direction, subject to *Class Counsel's* joint and several obligation to make appropriate refunds or repayments to the *Settlement Fund* plus accrued interest at the same net rate as is earned by the *Settlement Fund*, if and when, as a result of any successful collateral attack, the fee or cost award is reduced or reversed. If at the time of any disbursement from the *Settlement Fund* pursuant to Section 9 hereof there shall be a pending application for attorneys' fees or expenses or *Named Plaintiff* compensation, there shall be reserved in the *Settlement Fund* an amount equal to the amount of the pending application, until such time as the *Court* shall rule upon such application.

480295.6
2526157v2

11.    Termination of the *Settlement*.

11.1.    Termination. This *Settlement* may be terminated if (a) pursuant to Section 12, the *Parties* are unable to overcome any disapproval or opposition to the *Settlement* indicated by the Department of Labor, (b) the *Court* declines to enter the *Final Order*, or (c) the *Final Order* entered by the *Court* is reversed or modified in any material respect on appeal; provided that the terminating *Party*, within fourteen (14) days from the date (a), (b), or (c) occurs, furnishes written notice to *Class Counsel* or *Defendants' Counsel*, as the case may be, of the termination of this *Settlement*, specifying the terms modified or not approved that give rise to the right to terminate.

11.2.    Consequences of Termination of the *Settlement*. If the *Settlement* is terminated, the following shall occur:

11.2.1. *Class Counsel* and *Defendants' Counsel* shall within five (5) business days after the date of termination of the *Settlement* jointly notify the *Financial Institution* in writing to return to the remitting entity the amount it contributed on the *Defendants'* behalf to the *Settlement Fund*, with all net income earned thereon, after deduction of the amount disbursed or incurred for the *Class Notice* set forth in Section 9.1 or the taxes and expenses set forth in Section 9.4, and direct the *Financial Institution* to effect such return within five (5) business days. Prior to the return of amounts contemplated by this Section 11.2.1, the *Financial Institution* shall fully and finally fulfill all tax obligations of the *Settlement Fund* as set forth in Section 7.1.4.

11.2.2. The *Action* shall for all purposes revert to its status as of the day immediately before the *Agreement Execution Date*, and the *Parties* shall request a scheduling conference with the *Court*.

11.2.3. All provisions of this *Settlement Agreement* shall be null and void except as otherwise provided herein.

12.    Disapproval by the Department of Labor

In the event the Department of Labor indicates to *Defendants* its disapproval of or opposition to this *Settlement*, *Plaintiffs* agree to cooperate and work with *Defendants* to overcome such disapproval or opposition. In the event such disapproval or opposition is not overcome, *Defendants* shall have the right to terminate the *Settlement* at their sole discretion, pursuant to Section 11.1.

13.    Miscellaneous Provisions.

13.1.    Governing Law. This *Settlement Agreement* shall be governed by the laws of the State of Missouri without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

13.2.    Destruction of Materials. Except for attorney notes, pleadings, transcripts, and other *Court* submissions and exhibits thereto, each *Party* that received confidential material

13

480295.6
2526157v2

(including material obtained in informal discovery, initial disclosure material provided pursuant to Federal Rule of Civil Procedure 26, information provided for purposes of the *Settlement*, and all other confidential material) from an opposing *Party* in the course of litigating this *Action*, shall, within thirty (30) days after the *Final Order* becomes *Final*, if requested in writing by another *Party*, certify that all such copies of such materials in its custody or control, including in the possession of consultants of the opposing *Party*, have been destroyed.

13.3.    Severability.  In the event that any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any portion of Section 3.2 or 3.4 is not enforceable, the *Parties* may (but shall not be required to) jointly agree in writing to modify Section 3.2 to conform with such determination. With the sole exception set forth in the preceding sentence, the provisions of this *Settlement Agreement* are not severable.

13.4.    Amendment.  Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties*. Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Parties* and approved by the *Court*.

13.5.    Waiver.  The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving *Party*. The waiver by any *Party* of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

13.6.    Construction.  None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

13.7.    Principles of Interpretation.  The following principles of interpretation apply to this *Settlement Agreement:*

13.7.1.  Headings.  The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement.*

13.7.2.  Singular and Plural.  Definitions apply to the singular and plural forms of each term defined.

13.7.3.  Gender.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

13.7.4.  References to a *Person*.  References to a *Person* are also to the *Person's* permitted successors and assigns.

480295.6
2526157v2

13.7.5. <u>Terms of Inclusion</u>. Whenever the words "include," "includes," or "including" are used in this *Settlement Agreement,* they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

13.8. <u>Further Assurances</u>. Each of the *Parties* agrees, without further consideration, and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement.*

13.9. <u>Notices</u>. Any notice, demand, or other communication under this *Settlement Agreement* (other than the *Class Notice,* or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

<u>IF TO PLAINTIFFS:</u>

**Wolf Haldenstein Adler Freeman & Herz LLP**
Michael Jaffe, Esq.
270 Madison Ave.
New York, NY 10016
Telephone (212) 545-4600
Facsimile (212) 545-4653

**Norris & Keplinger, LLC**
Bruce Keplinger, Esq.
6800 College Boulevard, Ste. 630
Overland Park, KS 662211

<u>IF TO DEFENDANTS:</u>

**Shook, Hardy & Bacon LLP**
Timothy M. O'Brien, Esq.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

The *Plaintiffs* and the *Defendants* may change the address at which they are to receive notice by written notice delivered to each other in the manner described above.

13.10. <u>Entire Agreement</u>. This *Settlement Agreement* contains the entire agreement between the *Parties* relating to this *Settlement.*

13.11. <u>Counterparts</u>. This *Settlement Agreement* may be executed by exchange of faxed

15

480295.6
2526157v2

executed signature pages, and any signature transmitted by facsimile for the purpose of executing this *Settlement Agreement* shall be deemed an original signature for purposes of this *Settlement Agreement*. This *Settlement Agreement* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

13.12. Binding Effect. This *Settlement Agreement* binds and inures to the benefit of the *Parties* and their assigns, heirs, administrators, executors, and successors.

13.13. *Agreement Execution Date*. The date on which the final signature is affixed below shall be the *Agreement Execution Date*.

IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on the dates set forth below.

Dated: July 20, 2007

**FOR THE PLAINTIFFS:**

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

Fred Taylor Isquith, Esq.
Michael Jaffe, Esq.
270 Madison Ave.
New York, NY 10016
Telephone (212) 545-4600
Facsimile (212) 545-4653

**Lead Counsel**

Bruce Keplinger, Esq.
John R. Hicks, Esq.
NORRIS & KEPLINGER, LLC
6800 College Boulevard, Ste. 630
Overland Park, KS 662211

**Liaison Counsel**

Diane Nygaard, Esq.
THE NYGAARD LAW FIRM
9200 Ward Parkway, Ste. 550
Kansas City, MO 64114
Telephone (816) 531-3100
Facsimile (816) 531-3600

16

480295.6
2526157v2

Robert A. Izard, Esq.
Andrew M. Schatz, Esq.
Wayne Boulton, Esq.
SCHATZ & NOBLE
20 Church Street
Hartford, CT 06103

Lee Squitieri, Esq.
Stephen J. Fearon, Jr., Esq.
SQUITIERI & FEARON, LLP
32 East 57th Street, 12th Floor
New York, NY 10022

Ira H. Zuckerman, Esq.
LAW OFFICES OF MAX D. LEIFER, P.C.
434 Broadway, 4th Floor
New York, NY 10013

**Class Counsel**

**FOR THE DEFENDANTS:**

SHOOK, HARDY & BACON L.L.P.

Timothy M. O'Brien, Esq.
Matthew J. Wiltanger, Esq.
Neely L. Fedde, Esq.
2555 Grand Boulevard
Kansas City, Missouri 64108-2316
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

17

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

IN RE AQUILA ERISA LITIGATION

)
)
)

Case No. 04-cv-00865 (DW)

## FINDINGS AND ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT, APPROVING FORM AND DISSEMINATION OF CLASS NOTICE, AND SETTING DATE FOR HEARING ON FINAL APPROVAL

This Action involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"), with respect to Aquila, Inc.'s Retirement Investment Plan (the "Plan").[1]

Presented to the Court for preliminary approval is a settlement of the Action as against all Defendants. The terms of the Settlement are set out in a Class Action Settlement Agreement (the "Settlement Agreement"), executed by counsel on July 20, 2007 on behalf of the parties.

On _____, 2007, the Court preliminarily considered the Settlement to determine, among other things, whether the Settlement is sufficient to warrant the issuance of notice to members of the Class. Upon reviewing the Settlement Agreement, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.    <u>Class Findings.</u> The Court has previously found, by Order dated July 18, 2006, that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law have been met as to the "Class" defined therein, as follows: All Participants and beneficiaries of the Aquila, Inc. Retirement Investment Plan (the "Plan") for whose individual accounts the Plan purchased and/or held investments in Aquila

---

[1] Capitalized terms not otherwise defined in this order shall have the same meaning as ascribed to them in the Settlement Agreement.

common stock, the Aquila Common Stock Fund, and a fund consisting almost entirely of Enron Corporation common stock from January 1, 1999 to May 5, 2004. Excluded from the Class are Defendants, Aquila's Board of Directors throughout the Class Period, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest. The Class was certified under Fed. R. Civ. P. 23(b)(1) and the Named Plaintiffs were appointed as class representative for the Class.

2.    Preliminary Findings Regarding Proposed Settlement. The Court preliminarily finds that (i) the proposed Settlement resulted from extensive arm's-length negotiations at a mediation conducted by former federal judge Layn Phillips; (ii) the Class Counsel has concluded that the proposed Settlement is fair, reasonable, and adequate; and (iii) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class.

3.    Fairness Hearing. A hearing is scheduled for November 13, 2007 at 9:00 a.m. (the "Fairness Hearing") to determine, among other things:

- Whether the Settlement should be approved as fair, reasonable, and adequate;

- Whether the Complaint should be dismissed with prejudice pursuant to the terms of the Settlement;

- Whether the Class Notice provided for by the Settlement Agreement (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Fairness Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law;

- Whether Class Counsel adequately represented the Class for purposes of entering into and implementing the Settlement Agreement;

- Whether the Plan of Allocation should be approved;

2

- Whether the application for attorneys' fees and expenses filed by Class Counsel should be approved; and

- Whether the application for compensation for the Named Plaintiffs should be approved.

4.    Class Notice. A proposed form of Class Notice is attached hereto as Exhibit A. With respect to such form of Class Notice, the Court finds that such form fairly and adequately (a) describes the terms and effect of the Settlement Agreement and of the Settlement; (b) notifies the Class concerning the proposed Plan of Allocation; (c) notifies the Class that Class Counsel will seek an incentive award from the Settlement Fund for the Named Plaintiffs in an amount not to exceed $ 75,000, attorneys fees and expenses not to exceed 33% of the Settlement Amount, and reimbursement of the out-of-pocket expenses not to exceed $500,000; (d) gives notice to the Class of the time and place of the Fairness Hearing; and (e) describes how the recipients of the Class Notice may object to any of the relief requested. The Court directs that Class Counsel shall:

- By no later than forty-five (45) days before the Fairness Hearing, cause the Class Notice, in the form attached hereto as Exhibit A, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be sent to each Person within the Class who can be identified by reasonable effort. Such notice shall be sent either by first-class mail, postage prepaid, to the Person's last known address. The Defendants shall provide Class Counsel, upon request and in accordance with section 4.3.1 of the Settlement Agreement, with the names and last known addresses of the members of the Class to the extent such information is within Defendants' custody or control.

3

- By no later than forty-five (45) days before the Fairness Hearing, cause the Settlement Agreement and Class Notice to be posted on www.whafh.com.

- By no later than forty-five (45) days before the Fairness Hearing, cause a summary notice in the form attached hereto as Exhibit B, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be published on at least one occasion in the Kansas City Star.

At or before the Fairness Hearing, Class Counsel shall file with the Court a proof of timely compliance with the foregoing mailing and publication requirements.

5. <u>Objections to Settlement</u>. Any member of the Class who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to the Plan of Allocation, to any term of the Settlement Agreement, to the proposed award of attorneys' fees and expenses, or to any request for compensation for the Named Plaintiffs, may file an Objection. An objector must file with the Court a statement of his, her, or its objection(s), specifying the reason(s), if any, for each such objection made, including any legal support and/or evidence that such objector wishes to bring to the Court's attention or introduce in support of such objection. The objector must also mail the objection and all supporting law and/or evidence to Plaintiffs' Lead Counsel and to Defendants' Counsel. The addresses for filing objections with the Court and service on counsel are as follows:

To the Court:

Clerk of the Court
United States District Court for the Western District of Missouri
Charles Evans Whittaker Courthouse
400 E. Ninth St.
Kansas City, MO 64106

Re: <u>In re Aquila ERISA Litigation</u>,
Civil Action No.: 04-cv-00865 (DW)

4

To Plaintiffs' Lead Counsel:

> Michael Jaffe, Esq.
> Wolf Haldenstein Adler Freeman & Herz LLP
> 270 Madison Avenue
> New York, NY 10016

To Defendants' Counsel:

> Timothy M. O'Brien, Esq.
> Shook, Hardy & Bacon, L.L.P
> 2555 Grand Boulevard
> Kansas City, Missouri 64108-2613

The objector or his, her, or its counsel (if any) must effect service of the objection on counsel listed above and file it with the Court so that it is received by no later than October 31, 2007. If an objector hires an attorney to represent him, her, or it for the purposes of making such objection pursuant to this paragraph, the attorney must both effect service of a notice of appearance on counsel listed above and file it with the Court by no later than seven (7) court days before the date of the Fairness Hearing. Any member of the Class or other Person who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

6. <u>Appearance at Fairness Hearing</u>. Any objector who files and serves a timely, written objection in accordance with paragraph 5 above, may also appear at the Fairness Hearing either in person or through counsel retained at the objector's expense. Objectors or their attorneys intending to appear at the Fairness Hearing must effect service of a notice of intention to appear setting forth, among other things, the name, address, and telephone number of the objector (and, if applicable, the name, address, and telephone number of the objector's attorney) on Plaintiffs' Lead Counsel and on Defendants' counsel (at the addresses set out above). The

objector must also file the notice of intention to appear with the Court by no later than seven (7) court days before the date of the Fairness Hearing. Any objector who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.

7.  Service of Papers. Defendants' Counsel and Plaintiffs' Lead Counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

8.  Notice Expenses. The expenses of printing and mailing all notices required hereby shall be paid from the Settlement Fund as provided in Section 4.3.1 and 4.3.2 of the Settlement Agreement.

9.  Termination of Settlement. This Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is terminated in accordance with the Settlement Agreement. In such event, Section 11 of the Settlement Agreement shall govern the rights of the parties.

10.  Use of Order. In the event this Order becomes of no force or effect, it shall not be construed or used as an admission, concession, or declaration by or against Defendants, the Named Plaintiffs or the Class.

11.  Continuance of Hearing. The Court reserves the right to continue the Fairness Hearing without further written notice.

SO ORDERED this _____ day of _____, 2007.

_____
DEAN WHIPPLE, UNITED STATES DISTRICT JUDGE

6

# EXHIBIT 1-A

### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

|  |  |  |
|---|---|---|
|  | : |  |
| IN RE AQUILA ERISA | : | Case No. 04-CV-00865-DW |
| LITIGATION | : |  |
|  | : |  |

# NOTICE OF CLASS ACTION SETTLEMENT

## Your legal rights might be affected
## if you are a member of the following class:

ALL PARTICIPANTS AND BENEFICIARIES OF THE AQUILA, INC. RETIREMENT INVESTMENT PLAN (THE "PLAN") FOR WHOSE INDIVIDUAL ACCOUNTS THE PLAN PURCHASED AND/OR HELD SHARES OF THE AQUILA STOCK FUND OR THE ENRON STOCK FUND FROM JANUARY 1, 1999, THROUGH AND INCLUDING MAY 5, 2004.

### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION FROM A LAWYER.
### YOU HAVE NOT BEEN SUED.

- The Court has preliminarily approved a proposed settlement (the "Settlement") of a class action lawsuit brought under the Employee Retirement Income Security Act (often referred to as ERISA) against Aquila, Inc. (the "Company") and certain of its officers and directors. The Settlement will provide for payments to the Plan and for allocation of those payments to the accounts of members of the Class who had portions of their accounts invested in Aquila and/or Enron stock. The Settlement further provides for certain non-cash benefits to current Plan participants. The Settlement is summarized below.

- A hearing on the final approval of the Settlement and for approval of the Named Plaintiffs' motion for attorneys' fees and expenses and compensation to the Named Plaintiffs has been scheduled by the Court for November 13, 2007, at 9 a.m., before United States District Judge Dean Whipple. The hearing will be held at the United States District Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, 400 E. Ninth St., Kansas City, Missouri, in Courtroom 8b or in the Courtroom then occupied by Judge Whipple.

- Any objections to the Settlement, or to the motion for attorneys' fees and expenses and/or any award to the Named Plaintiffs, must be served in writing on Plaintiffs' Lead Counsel for the Class and Defendants' attorneys, as identified on page 13 of this Notice. The procedure for objecting is described below.

- This Notice contains summary information with respect to the *Settlement*. The terms and conditions of the *Settlement* are set forth in the *Settlement Agreement* dated July 27, 2007. Capitalized and italicized terms used in this Notice but not defined in this Notice have the meanings assigned to them in the *Settlement Agreement*. The *Settlement Agreement*, and additional information with respect to this lawsuit and the *Settlement*, are available at www.whafh.com, or from Plaintiffs' Lead Counsel identified below. Plaintiffs' Lead Counsel has also established a toll-free telephone number to receive your comments and questions: 1-800-xxx-xxxx, and may also be contacted via email at: xxx@gardencitygroup.com .

- Please be advised that this *Settlement* is distinct from a settlement reached in the case captioned In re Aquila Securities Litigation (Carpe v. Aquila), Case No. 02-0388-cv-w-FJG (W.D. Mo.), for which you may have received another notice. This *Settlement* involves different parties, different claims and different rights and obligations.

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT: | |
| --- | --- |
| **YOU CAN DO NOTHING.** | If the *Settlement* is approved by the Court and you are a member of the *Class*, you will receive whatever cash or other benefits are provided to you under the *Settlement* without having to file a claim or take any other action. |
| **OBJECT** (BY OCTOBER 31, 2007). | If you wish to object to any part of the *Settlement*, you may (as discussed below) write to the Court and counsel about why you object to the *Settlement*. |
| **NO ACTION IS NECESSARY TO RECEIVE PAYMENT.** | If you are a current *Plan* participant and are entitled to share in the *Settlement Fund*, any share of the *Settlement Fund* to which you are entitled will be deposited into your *Plan* account. If you are no longer a *Plan* participant and are entitled to share in the *Settlement Fund*, a *Plan* account will be established for you, if necessary, and you will be notified of such account. |
| **GO TO A HEARING** (TO BE HELD ON NOVEMBER 13, 2007). | If you submit a written objection to the *Settlement* to the Court and counsel before the October 31, 2007 deadline, you may (but do not have to) attend the Court hearing about the *Settlement* and present your objections to the Court. You may attend the Hearing even if you do not file a written objection, but you may not be permitted to address the Court at the Hearing if you do not timely notify the Court and counsel |

482475

| | of your intention to appear at the Hearing by October 31, 2007 as described herein. |
|---|---|

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made only if the Court approves the Settlement and that approval is upheld in the event of any appeals.

482475

2536004v5

## WHAT THIS NOTICE CONTAINS

**SUMMARY OF SETTLEMENT** — 5

**BASIC INFORMATION** — 7

1. Why did I get this Notice package? — 7
2. What is the Action about? — 8
3. Why is this case a Class Action? — 11
4. Why is there a Settlement? — 12
5. How do I know whether I am part of the Settlement? — 12
6. Are there exceptions to being included? — 12

**THE SETTLEMENT BENEFITS - WHAT YOU GET** — 13

7. What does the Settlement provide? — 13
8. How much will my payment be? — 13
9. How can I get a payment? — 14
10. When would I get my payment? — 14
11. Can I get out of the Settlement? — 15

**THE LAWYERS REPRESENTING YOU** — 15

12. Do I have a lawyer in the case? — 15
13. How will the lawyers be paid? — 15
14. How do I tell the Court if I don't like the Settlement? — 16

**THE COURT'S FAIRNESS HEARING** — 17

15. When and where will the Court decide whether to approve the Settlement? — 17
16. Do I have to come to the hearing? — 18
17. May I speak at the hearing? — 18

**IF YOU DO NOTHING** — 18

18. What happens if I do nothing at all? — 18

**GETTING MORE INFORMATION** — 18

19. Are there more details about the Settlement? — 18
20. How do I get more information? — 19

4

482475

## SUMMARY OF SETTLEMENT

A Cash Settlement Fund, as well as certain non-monetary benefits, have been achieved through the Settlement.

### What Is the Cash Settlement Fund?

The Cash Settlement Fund is a $10.5 million payment that the Company's insurer will make to an escrow fund. After taxes, expenses, attorneys' fees and costs, and compensation to the Named Plaintiffs are paid, the net amount in the Cash Settlement Fund, including interest, will be paid to the Plan and allocated to Class members according to a Plan of Allocation to be approved by the Court.

### What Are the Non-Cash Benefits of the Settlement?

1. The Company will retain an independent advisor or independent third-party fiduciary for three years to advise the fiduciaries regarding the Plan's investment in Company stock;

2. All existing and future matching and discretionary contributions will immediately become 100% vested;

3. The Company will take no action in the future to restrict the ability of Plan participants to sell Company stock (except in instances required to comply with applicable law), as is consistent with the current Plan terms; and

4. The Company will identify the Plan's fiduciary structure in future Plan documents and Summary Plan Descriptions such that it is clear who exercises fiduciary responsibility for the Plan's assets.

### Other Retirement Benefits Provided Since the Action Was Filed

After the Action was filed, the Company enhanced the benefits it provides employees and retirees as follows, effective January 1, 2005:[1]

---

[1] This information broadly summarizes the benefit changes, and is not intended to limit, further enhance, or modify the benefits provided by the Company. This summary does not contain all of the technical provisions or special exceptions set forth in the Company's benefit plan documents. If this information conflicts with the information contained in the plan documents, the information in the plan documents controls. You should consult the plan documents to determine the full scope of these enhancements. If you terminated employment with the Company before January 1, 2005, these enhancements do not apply to you and you should review the summary plan descriptions and legal plan documents in effect at the time your employment with the Company terminated.

482475

1.       Employees who retire after December 31, 2004, who qualify for retiree medical benefits now receive a medical premium reduction credit equal to the employees' years of service times $1500.

2.       The Company enhanced its Pension Plan by changing the method by which it calculates pension payments. It (i) eliminated the 30-year cap on service; and (ii) began using total compensation (i.e., base salary and bonus) for years of service after 2004, rather than only base pay.

3.       The Company offers current employees free financial planning, which includes access to financial planners via a toll-free 800 number and access to an interactive website.

## STATEMENT OF ATTORNEYS' FEES AND COSTS SOUGHT IN THE ACTION

The attorneys' fees and expenses of the litigation (including the cost of class notice, a portion of the cost of retaining an independent fiduciary to evaluate the Settlement and the cost of settlement administration) will be taken from the Cash Settlement Fund. Lead Counsel will apply to the Court for an order awarding attorneys' fees in an amount not in excess of 33% of the amount recovered in Settlement, plus reimbursement of expenses not to exceed $500,000. The actual amount of attorneys' fees and expenses and any awards to the Named Plaintiffs will be determined by the Court.

### What Will the Named Plaintiffs Get?

The Named Plaintiffs in the Action will share in the allocation of the money paid to the Plan on the same basis and to the same extent as all other members of the Class. The Named Plaintiffs may also apply to the Court for additional compensation not to exceed a collective total of $75,000, which will be payable from the proceeds of the Cash Settlement Fund.

## BASIC INFORMATION

### 1.    Why did I get this Notice package?

You or someone in your family are or may have been a participant in or beneficiary of the Plan and/or one of its predecessor plans.

The Court caused this Notice to be sent to you because, if you fall within that group, you have a right to know about the Settlement and about all of your options before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, the net amount of Settlement Fund will be paid to the Plan and then allocated among Class members according to a Court-approved Plan of Allocation, and the non-cash benefits will be provided. This Notice package describes the litigation, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of this case is the United States District Court for the Western District of Missouri. The people who brought this suit are called the "Named Plaintiffs," and the people they sued are called the "Defendants." The Named Plaintiffs in the Action are Richard L.

6

Itteilag; Barry T. O'Brien; Sharon Arr; Christine Wolf; John F. Pribyl, Sr.; Robert C. Goodson; Michael Tylutki; and Michael Reinhardt. The Defendants in the Action are the Company; Richard C. Green, Jr.; Robert K. Green, Avis Green Tucker; Stanley O. Ikenberry; Herman Cain; Irvine O. Hockaday, Jr.; John R. Baker; L. Patton Kline; Robert F. Jackson, Jr.; Shirley Ann Jackson; Ronald T. LeMay; Gerald L. Shaheen; Michael M. Crow; Phil Beyer; Randal P. Miller; and Heidi E. Hutter.

The legal Action that is the subject of this Notice and the Settlement is known as In re Aquila ERISA Litigation, Civil Action No. 04-cv-00865-dw (the "Action").

## 2.  What is the Action about?

**The Claims in the Action**

The Action claims that the Defendants were fiduciaries of the Plan and violated fiduciary duties under ERISA that they owed to the Plan. In their Complaint, the Named Plaintiffs asserted causes of Action for the losses they allege were suffered by the Plan as the result of the alleged breaches of fiduciary duty by the Defendants.

Participants in the Plan were able to allocate their account balances among various investment funds, including a fund primarily invested in Company stock. In addition, until February 2003, the Company made matching and discretionary contributions into Plan participants' accounts exclusively in the Company Stock Fund. The Action alleges that as of the beginning of the Class Period, the Company and some of its individual officers and employees had the discretion to freeze investments in Company stock and to sell the Plan's holdings of Company stock, and that they failed to do so in violation of their fiduciary duties. The Action also alleges that certain other Defendants had the duty to monitor the performance of the responsible officers and employees and failed to do so in violation of their fiduciary duties. The Action further alleges that the Defendants knew or should have known that the Company Stock Fund was not a prudent retirement investment during the Class Period and that the Defendants acted imprudently by not preventing further investment in the Company Stock Fund and not liquidating the Plan's Company Stock Fund holdings. The Action further alleges that Defendants violated their alleged fiduciary duties by failing to provide Plan participants with complete and accurate public information about the Company.

**The Defenses in the Action**

In their Answers to the Complaint, the Defendants not only denied each and every material allegation of the Complaint but also pleaded affirmative defenses which, if established by the evidence, would have resulted in judgment in the Defendants' favor. In addition, in responses to Interrogatories, the Defendants set forth the positions they intended to raise on a summary judgment dismissal motion and/or at trial. Had the Settlement described herein not been reached and this case adjudicated on the merits, the Defendants would have argued that judgment should be entered in their favor because, among other things:

- The Defendants were not fiduciaries of the Plan, or, if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in the Action;

7

- To the extent they were fiduciaries as to the matters at issue in the Action, the Defendants fully discharged all fiduciary duties imposed on them by ERISA;

- Even if the Defendants failed to discharge one or more of their ERISA fiduciary duties, any such breach of fiduciary duty did not cause the losses alleged by the Named Plaintiffs;

- Although the Court granted the Named Plaintiffs' motion for class certification, the Action should be decertified based on recent rulings of courts in similar cases;

- Company stock was a prudent and viable retirement investment throughout the Class Period, and financial and operating issues that arose for the Company during the Class Period as alleged in the Complaint did not render the Company's stock an imprudent investment for the Plan, and the Defendants could not have reasonably foreseen the problems in the industry that may have ultimately hurt the Company and its stock price; and

- All necessary and relevant disclosures about the Company's business, operations and prospects were made available to the Plan's participants throughout the Class Period.

**The Action Has Been Aggressively Litigated**

Counsel for the Named Plaintiffs have conducted an extensive investigation of the allegations in the Action and of the losses suffered by the Plan, with the assistance and active involvement of experts in the areas of ERISA fiduciary liability and damages. Through that investigation and through discovery of information in the Action, counsel for the Named Plaintiffs have obtained and reviewed tens of thousands of pages of documents, including Plan-governing documents and materials, communications with Plan participants, internal Company documents regarding the Plan, SEC filings, press releases, public statements, news articles and other publications and documents. Counsel for the Named Plaintiffs have also taken the depositions of many of the Defendants and several non-parties and have thoroughly reviewed the testimony of Defendants and others given in other related proceedings.

The Named Plaintiffs' counsel opposed a motion by the Defendants to dismiss the Named Plaintiffs' claims. The Court granted Defendants' motion to dismiss in part, resulting in the loss of several of the claims in the Complaint.

The Named Plaintiffs' counsel filed a motion for certification of the Action as a class action. In connection with that class certification motion, each of the Named Plaintiffs had his or her deposition taken by the Defendants and responded to the Defendants' requests for certain information. The Court granted the motion for class certification in all respects and certified the Action as a class action under Fed. R. Civ. P. 23, with the Named Plaintiffs appointed as Class Representatives.

482475

**Statement of Potential Outcome of the Action**

As with any litigated case, the Named Plaintiffs and the Class would face an uncertain outcome if the Action were to continue against the Defendants. Continued litigation of the Action against these Defendants could result in a judgment or verdict greater or lesser than the recovery under the Settlement Agreement, or no recovery at all, or a judgment or verdict in favor of the Defendants.

Throughout this Action, the Named Plaintiffs and the Defendants have disagreed on both liability and recoverable losses, and they do not agree on the amount that would be recoverable even if the Named Plaintiffs and the Class were to prevail at trial. The Defendants have denied and continue to deny the claims and contentions alleged by the Named Plaintiffs, that they are liable at all to the Class, and that the Class or the Plan have suffered any damages for which the Defendants could be held legally responsible. Nevertheless, the Defendants have taken into account the uncertainty and risks inherent in any litigation, particularly in a complex case such as this, and have concluded that it is desirable that the Action be fully and finally settled as to them on the terms and conditions set forth in the Settlement Agreement.

**Settlement Discussions**

The Settlement is the product of extensive negotiations between the Named Plaintiffs' counsel and the Defendants' counsel, with the assistance of a mediator. Throughout the settlement negotiations, the Named Plaintiffs were advised by various consultants and experts, including individuals with expertise in ERISA fiduciary liability issues, damage estimations and insurance coverage issues.

| 3. | Why is this case a Class Action? |
|----|----------------------------------|

The Court has certified the Class in the Action. In a class action, one or more plaintiffs sue on behalf of people who have similar claims. All of the individuals on whose behalf the Named Plaintiffs are suing are "Class Members." One Court resolves the issues for all Class Members. U.S. District Judge Dean Whipple is presiding over this case.

| 4. | Why is there a Settlement? |
|----|----------------------------|

The Court has not reached any final decisions in connection with Named Plaintiffs' claims against the Defendants. Instead, the Named Plaintiffs and the Defendants have agreed to the Settlement. In reaching the Settlement, they have avoided the cost and time of a trial.

On the one hand, continuation of the case against the Defendants could result in a judgment greater than this Settlement. On the other hand, continuing the case against them could result in a judgment for less money than Named Plaintiffs have obtained in this Settlement, or no recovery at all. Based on these factors, the Named Plaintiffs and their counsel believe that the Settlement is best for all Class members. Additional information concerning the Settlement and these factors is available in the motion for preliminary approval of the Settlement Agreement, which may be obtained at www.whafh.com or directly from the Clerk of the United States District Court for the Western District of Missouri.

9

482475

## 5.     How do I know whether I am part of the Settlement?

The benefits of the Settlement will be distributed among members of the Class, according to a Court-approved Plan of Allocation. You are a member of the Class if you fall within the following definition:

> All participants and beneficiaries of the Aquila, Inc. ("Aquila") Retirement Investment Plan (the "Plan") for whose individual accounts the Plan purchased and/or held investments in a fund consisting almost entirely of common stock of Aquila and/or a fund consisting almost entirely of Enron Corporation common stock, from January 1, 1999, to May 5, 2004. Excluded from the Class are Defendants herein, Aquila's Board of Directors throughout the Class Period, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.

## 6.     Are there exceptions to being included?

You are not a member of the Class if you are a Defendant in the Action, were a member of the Company's Board of Directors during the Class Period, or are a beneficiary of the foregoing.

## THE SETTLEMENT BENEFITS - WHAT YOU GET

## 7.     What does the Settlement provide?

The Settlement calls for the Company to create the Cash Settlement Fund of $10.5 million and to provide certain non-cash benefits, as described above.

The amount remaining in the Cash Settlement Fund, after payment of Court-approved attorneys' fees and expenses, Court-approved compensation to the Named Plaintiffs, Court-approved payment of the administration of the Settlement and establishment of reserves for any taxes owed by the Cash Settlement Fund (the "Net Settlement Fund"), will be allocated to members of the Class according to a Plan of Allocation to be approved by the Court. Allocations will be made into the existing Plan accounts of members of the Class who are entitled to a share of the Net Settlement Fund under the Plan of Allocation. Plan accounts will be reinstated for those members of the Class who are entitled to a share of the Net Settlement Fund under the Plan of Allocation but who no longer have Plan accounts.

All Class members and anyone claiming through them are deemed to fully release the Released Parties from the Released Claims. The Released Parties include the Defendants and their officers, directors, employees, attorneys, and agents. The Released Claims generally include all claims which were or could have been asserted in the Action. This means that Class members will not have the right to sue the Released Parties for anything related to the investment of Plan assets or other alleged fiduciary misconduct during the Class Period concerning the Plan.

10

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Agreement (including its exhibits), which may be obtained at www.whafh.com, or by contacting Plaintiffs' Lead Counsel listed on page _ above.

## 8.  How much will my payment be?

**You are not required to submit any claim or other form to receive an allocation from this Settlement, and you are not responsible for determining the amount you may be entitled to receive under the Settlement.** The calculation of the amount you are entitled to receive will be done as part of the implementation of the Settlement and will be based upon records maintained by the Plan and/or the administrator(s) of the Plan. If you are entitled to a share of the Net Settlement Fund, your account statement will reflect the amount of your share.

Your share of the Net Settlement Fund proceeds will depend on your loss, as calculated pursuant to a Court-approved Plan of Allocation, related to investment by the Plan in the Company Stock Fund during the Class Period (the "Recognized Loss"), and the amount of that loss relative to the Recognized Loss of all other Class members. Because the Net Settlement Fund is an amount that is less than the total Recognized Losses of the Class, each Class member's proportionate recovery will be less than his or her Recognized Loss.

In general, each Class member's proportionate share of the Net Settlement Fund will be calculated as follows:

- Using the Plan's records and other records as necessary, the Plan recordkeeper shall identify each member of the Class.

- A "Recognized Loss" will be calculated for each member of the Class, equal to

(a)  the sum of:

   (i)  the dollar amount of the participant's account balance invested in the Company Stock Fund on October 1, 1999, and

   (ii)  the dollar amount of investments in the Company Stock Fund (through employee contributions, employer contributions and/or cash dividends) added to the participant's account from October 1, 1999, to February 28, 2003;

(b)  minus the sum of:

   (iii)  the dollar amount of a participant's account balance invested in the Company Stock Fund as of February 28, 2003; and

   (iv)  the dollar amount of all distributions and transfers out of the Company Stock Fund from a participant's account from October 1, 1999, to February 28, 2003.

11

482475

- The Recognized Loss for those Class members who were employed by the Company as of January 1, 2005 (and who will therefore receive the benefit of the mitigation remedies described on pages 5-6) will be reduced by 50%.

- Following all of the above calculations (including the 50% reduction in the Recognized Loss for those employed by the Company as of January 1, 2005) the Recognized Losses of all Class members will be totaled, which total shall equal the Aggregate Recognized Loss for the Class. A Recognized Loss percentage will be calculated for each Class member, which will equal the ratio of each Class member's Recognized Loss to the Aggregated Recognized Loss. Each Class member will receive a share of the Net Settlement Fund equal to the amount of the Net Settlement Fund multiplied by his or her Recognized Loss percentage.

- If, based on the above calculations, the proportionate recovery of a former participant is of a de minimus amount, it may be distributed pro rata to other Class members.

## 9.     How can I get a payment?

You do not need to file a claim. If you are a Class member entitled to a share of the Net Proceeds, your share will be deposited in your Plan account. If you are a former Plan participant, your Plan account will be reestablished. If you are a current or former participant and have not provided the Plan with your current address, please contact Plaintiffs' Lead Counsel at the address provided on p. 3 above.

## 10.     When would I get my payment?

Payment is conditioned on several matters, including the Court's approval of the Settlement and such approval becoming final and no longer subject to any appeals to any Court. Any appeal of the final approval may take several years. If the Settlement is approved by the Court, and there are no appeals from such approval, it is reasonably anticipated that the Net Cash Settlement Amount will be paid to the Plan and allocated among participants in late 2007 or early 2008. Any accrued interest on the Settlement Fund will be included in the amount paid to the Plan and allocated to the Plan accounts of Class members.

**There Will Be No Payments If The Settlement Agreement Is Terminated.**

The Settlement Agreement may be terminated on several grounds, including if (1) the Court does not approve or materially modifies the Settlement or (2) either as modified by the Court or as a result of reversal or modification on appeal, the Court's Final Order in the case does not satisfy certain terms of the Settlement. Should the Settlement Agreement be terminated, the Settlement will be terminated, the certification of the Class for Settlement purposes will be vacated, and the Action will proceed as if the Settlement Agreement had not been entered into.

## 11.     Can I get out of the Settlement?

You do not have the right to exclude yourself from the Settlement. The Action was certified under Federal Rule of Civil Procedure 23(b)(1) and is therefore a non "opt-out" class

12

action. Thus, it is not possible for any participants or beneficiaries to exclude themselves from the benefits of the Settlement. As a Class member, you will be bound by any judgments or orders that are entered in the Action for all claims that were or could have been asserted in the Action or are otherwise included in the release under the Settlement.

Although you cannot opt out of the Settlement, you can object to the Settlement and ask the Court not to approve it. See Answer to Question No. 14, below.

## THE LAWYERS REPRESENTING YOU

### 12. Do I have a lawyer in the case?

The Court has appointed the law firm Wolf Haldenstein Adler Freeman & Herz LLP as Plaintiffs' Lead Counsel in the Action. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 13. How will the lawyers be paid?

Attorneys' fees and expenses, the costs of class notice and Settlement administration, and any awards to the Named Plaintiffs, all of which will reduce the Cash Settlement Amount, will be determined by the Court. The Defendants have agreed to take no position with respect to the amount of attorneys' fees and expenses or a reasonable award to the Named Plaintiffs. Plaintiffs' Lead Counsel has agreed to limit application for an award of attorneys' fees to not more than 33% of the Cash Settlement Fund and to limit reimbursement of expenses incurred in connection with the prosecution of the Action to no more than $500,000.

### 14. How do I tell the Court if I don't like the Settlement?

If you are a Class member, you can tell the Court that you do not agree with the Settlement or some part of it, including the fees and expenses the attorneys intend to seek or request for compensation to the Named Plaintiffs. To object, you must send a letter or other written filing saying that you object to the Settlement in In re Aquila ERISA Litigation, Civil Action No. 04-02-00865 (DW). Be sure to include your name, address, telephone number, signature, and a full explanation of all reasons you object to the Settlement. Your written objection must be filed with the Court by October 31, 2007. The Court's address is: Clerk of the U.S. District Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, 400 E. Ninth St., Kansas City, Missouri, 64106. Your written objection must also be mailed to the counsel listed below, to be **received by no later than October 31, 2007**:

| PLAINTIFFS' LEAD COUNSEL | DEFENDANTS' COUNSEL |
|---|---|
| Michael Jaffe<br>Wolf Haldenstein Adler Freeman & Herz LLP<br>270 Madison Avenue<br>New York, New York 10017<br>Facsimile: (212) 545-4653 | Timothy M. O'Brien<br>SHOOK, HARDY & BACON L.L.P.<br>2555 Grand Blvd.<br>Kansas City, MO 64108<br>Facsimile: (816) 421-5547 |

13

482475

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement as fair, reasonable and adequate (the "Fairness Hearing"). You may attend the Fairness Hearing, and you may ask to speak, but you do not have to attend.

### 15. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at 9:00 a.m. on November 13, 2007, at the United States District Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, 400 E. Ninth St., Kansas City, Missouri, in Courtroom 8b or in the Courtroom then occupied by United States District Judge Dean Whipple. At that hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the Settlement. The Court will also rule on the motions for attorneys' fees and expenses and any awards to the Named Plaintiffs.

### 16. Do I have to come to the hearing?

No. Plaintiffs' Lead Counsel will answer questions the Court might have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, it will be before the Court when the Court considers whether to approve the Settlement as fair, reasonable and adequate. You also may pay your own lawyer to attend the Fairness Hearing, but such attendance is not necessary.

### 17. May I speak at the hearing?

If you are a Class member, you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in In re Aquila ERISA Litigation, Civil Action No. 04-CV-00865 (DW)." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be filed with the Clerk of the Court and served on the attorneys at the addresses listed in the Answer to Question No. 14, and must be **received by no later than October 31, 2007**.

## IF YOU DO NOTHING

### 18. What happens if I do nothing at all?

If you do nothing and you are a Class member, you will participate in the Settlement of the Action as described above if the Settlement is approved.

14

482475

# GETTING MORE INFORMATION

## 19.    Are there more details about the Settlement?

This Notice summarizes the proposed Settlement. The complete Settlement is set forth in the Settlement Agreement. You may obtain a copy of the Settlement Agreement by making a written request to the Plaintiffs' Lead Counsel. Copies may also be obtained at www.whafh.com. The Settlement Agreement also was filed with the Clerk of the Court and may be obtained from the Clerk's office directly.

## 20.    How do I get more information?

Plaintiffs' Lead Counsel has established a toll-free phone number to receive your comments and questions: _1-800-xxx-xxxx.    You may also contact Plaintiffs' Lead Counsel at: xxxx@gardencitygroup.com.

15

482475

2536004v5

# EXHIBIT 1-B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| IN RE AQUILA ERISA LITIGATION | ) | Case No. 04-cv-00865 (DW) |
| | ) | |

## COURT-ORDERED LEGAL NOTICE
### (Summary)

YOUR LEGAL RIGHTS MAY BE AFFECTED IF YOU WERE A PARTICIPANT OR BENEFICIARY OF THE AQUILA, INC. RETIREMENT INVESTMENT PLAN ("PLAN") FOR WHOSE INDIVIDUAL ACCOUNT THE PLAN PURCHASED AND/OR HELD SHARES OF THE AQUILA STOCK FUND OR ENRON STOCK FUND FROM JANUARY 1, 1999, THROUGH MAY 5, 2004.

A settlement (the "Settlement") has been preliminarily approved by the federal court in a class action lawsuit alleging breaches of fiduciary duties under the Employee Retirement Income Security Act ("ERISA") in connection with the Aquila, Inc. Retirement Investment Plan (together with any predecessor plans and any plans that have been merged into it, hereinafter defined as the "Plan"). This Settlement will provide for a payment of $10,500,000 to the Plan (minus Court-approved fees and expenses), which will then be allocated to the accounts of Plan participants who had portions of their Plan accounts invested in the Aquila Stock Fund.

If you qualify, you may receive such an allocation. You do not need to send in a claim or take any other action unless you object to the Settlement.

The United States District Court for the Western District of Missouri authorized this notice. **THE COURT WILL HOLD A HEARING ON NOVEMBER 13, 2007 TO DECIDE WHETHER TO APPROVE THE SETTLEMENT.**

476331.5
2541978v6

### Who is Included in the Settlement?

If you were a participant in the Plan for whose individual account the Plan purchased and/or held shares of the Aquila Stock Fund or the Enron Stock Fund at any time during the period January 1, 1999 through May 5, 2004, or you are a beneficiary of any such participant, you are a member of the Class and your rights may be affected as a result of the Settlement. The Defendants in the litigation are excluded from the Class.

### What Is This Case About?

The Plaintiffs in the case claim that the Defendants breached their fiduciary duties with respect to the Plan by continuing to allow the investment of participant account balances in the Aquila Stock Fund and by other related acts. The Defendants all deny they did anything wrong. The Court has not ruled in favor of either side.

### How Will the Settlement Money Be Allocated?

If you are a Class member, you may receive a share of the Settlement money paid into the Plan if you had any portion of your Plan account invested in the Aquila Stock Fund during the Class Period. Your share of the net Settlement Fund will be based on your proportionate share of the losses alleged to have been suffered by the Plan as a result of the acquisition and holding of shares in the Aquila Stock Fund during the Class Period.

### What Fees and Expenses are Being Sought by the Attorneys?

The lawyers who have prosecuted this case for the Plaintiffs and the Class on a contingent fee basis will apply to the Court for fees of no more than 33% of the Settlement amount, plus reimbursement of expenses they have paid to advance the case in an amount not to exceed $500,000, plus the costs of class notice and settlement administration, plus a compensation award to the Named Plaintiffs who brought and prosecuted the action. The actual amount of attorneys' fees, expenses and any awards to the Named Plaintiffs will be determined

2

476331.5
2541978v6

by the Court. Members of the Class may object to the request for attorneys' fees, expenses and any awards to the Named Plaintiffs.

### Are There More Details to the Settlement?

The Settlement includes a number of other important details. These include, but are not limited to, provisions relating to (1) releases of claims against the Defendants by the Class; and (2) how the payment to the Plan will be allocated among members of the Class.

### How Do I Get More Information?

If you have received in the mail a Notice of Class Action Settlement regarding this case, you should read that document for more information. It is more detailed than this summary notice. Among other things, it includes a more detailed description of the terms of the Settlement and the Settlement Agreement, a description of the history of the case, an explanation of the reasons for the Settlement and detailed instructions for filing an objection to the Settlement and/or to the requests for attorneys' fees, expenses and any awards to the Named Plaintiffs. If you did not receive a Notice of Class Action Settlement in the mail, you may request one by calling, toll-free, 1-800-xxx-xxxx or by emailing xxxxx@gardencitygroup.com.

You may also contact Plaintiffs' Lead Counsel directly at:

> Michael Jaffe, Esq.
> Wolf Haldenstein Adler Freeman & Herz LLP
> 270 Madison Avenue
> New York, NY 10017
> Fax: (212) 545-4653

Copies of the Settlement Agreement, and additional information regarding the Settlement, are also available at www.whafh.com.

### What Are My Options?

You cannot "opt out" or exclude yourself from the Class, but you may object to the Settlement (including to the Plan of Allocation governing the Settlement Amount), or to the

3

requests for attorneys' fees and expenses or any awards to the Named Plaintiffs. If you wish to object, you must file a written objection with the Court, so that it is received by no later than October 31, 2007. If you do not want to object to the Settlement, you do not have to do anything.

### **What Happens Next?**

The Court will hold a Fairness Hearing on November 13, 2007 in Kansas City, Missouri. At that hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. To appear at the Fairness Hearing in person you must file a Notice of Intent to Appear with the Court and serve it on the parties as set forth more fully in the mailed Notice of Class Action Settlement. After the Fairness Hearing, the Court will decide whether to approve the Settlement.

4

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| IN RE AQUILA ERISA LITIGATION | Case No. 04-cv-00865 (DW) |

## FINAL ORDER AND JUDGMENT

This Action involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"), with respect to the Aquila, Inc.'s Retirement Investment Plan (the "Plan").[1]

This matter came before the Court for a hearing pursuant to the Order of this Court filed _____, 2007, on the application of the Parties for approval of the Settlement set forth in the Class Action Settlement Agreement (the "Settlement Agreement"), executed by counsel on July 20, 2007 on behalf of the Parties. Due and adequate notice having been given to the Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    This Court has jurisdiction over the subject matter of this Action and over all Parties to the Action, including all members of the Class.

2.    On July 18, 2006, this Court certified a class in this Action consisting of all participants and beneficiaries of the Aquila, Inc. Retirement Investment Plan for whose individual accounts the Plan purchased and/or held investments in a fund consisting almost

---

[1] Capitalized terms not otherwise defined in this order shall have the same meaning as ascribed to them in the Settlement Agreement.

entirely of common stock of Aquila and/or a fund consisting almost entirely of Enron Corporation common stock, from January 1, 1999 through May 5, 2004, inclusive. Excluded from the class are Defendants, Aquila's Board of Directors throughout the class period, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest (the "Class").

3.    On or after _____, 2007, more than _____ copies of the Class Notice were mailed to Class members.

4.    On _____, 2007, a summary of the Class Notice was published in the Kansas City Star.

5.    In accordance with the Court's Preliminary Approval Order, the Class Notice and Settlement Agreement were posted on Wolf Haldenstein Adler Freeman & Herz's website (www.whafh.com).

6.    The Class Notice and the summary of the Class Notice fully informed Class members of their rights with respect to the Settlement, including the right to object to the Settlement or the application for an award of attorneys' fees and reimbursement of expenses.

7.    The Class Notice and the summary of the Class Notice collectively met the statutory requirements of notice under the circumstances, including the individual notice to all members of the Class who could be identified through reasonable effort, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirement of due process.

8.    This Action and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice as to the Named Plaintiffs, the Class members, and the Plan, and as against the Releasees. The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement.

2

9.      The Court finds that the Settlement is fair, just, reasonable, and adequate as to each member of the Class, and that the Settlement Agreement, and the Settlement contained therein, is hereby finally approved in all respects, and the Parties are hereby directed to perform its terms.

10.      The Named Plaintiffs, on behalf of themselves, the Plan and the Class, are deemed to have, and by operation of this Judgment have, absolutely and unconditionally released and forever discharged the Releasees from the Released Claims.

11.      All members of the Class are hereby forever barred and enjoined from prosecuting the Released Claims against the Releasees.

12.      Each of the Defendants are deemed to have, and by operation of this Judgment have, absolutely and unconditionally released and forever discharged the Named Plaintiffs, the Class, and Class Counsel and their Related Parties from any and all claims relating to, or in connection with the institution or prosecution of this Action or the Settlement of any Released Claim.

13.      The Plan of Allocation is approved as fair and reasonable, and Class Counsel is directed to administer the Settlement in accordance with its terms and provisions.  Any modification or change in the Plan of Allocation that may hereafter be approved shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

14.      Class Counsel is hereby awarded attorneys' fees in the amount of $_____, representing ____% of the Settlement Fund, which the Court finds to be fair and reasonable, and $_____ in reimbursement of Class Counsel's reasonable expenses incurred in prosecuting the Action. The attorneys' fees and expenses so awarded shall be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement, as provided in the Settlement Agreement,

3

with interest on such amounts from the date the Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns. All fees and expenses paid to Class Counsel shall be paid pursuant to the timing requirements described in the Settlement Agreement. The award of attorneys' fees shall be allocated by Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel in a manner which, in its sole discretion, Lead Counsel determines fairly compensates all Class Counsel for their respective contributions to the prosecution of the Action.

15. _____ is hereby awarded payment in the amount of $_____, and _____ is hereby awarded $_____, as reimbursement for reasonable fees and expenses incurred to date in the administration of the Settlement, including fees and costs associated with the Class Notice, which the Court finds reasonable and necessary.

16. The Named Plaintiffs are hereby awarded incentive awards in the following amounts: $_____, $_____.

17. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) The Settlement achieved as a result of the efforts of Class Counsel has created a fund of $10,500,000 in cash that is already on deposit, plus interest thereon, and will benefit thousands of Class members;

(b) More than _____ copies of the Class Notice were disseminated to Class members indicating that Class Counsel was moving for attorneys' fees in the amount of up to 33 percent of the Settlement Fund and for reimbursement of expenses of up to $500,000, and that the Named Plaintiffs would seek compensation awards totaling no more than $75,000. [_____] objections were filed against the terms of the proposed Settlement, and [_____] objections were

4

filed against the fees and expenses requested by Class Counsel contained in the Notice, and [___]

objections were filed against the compensation awards requested for the Named Plaintiffs;

(c)    Counsel for the Parties have conducted the Action and achieved the Settlement, with skill, perseverance, and diligent advocacy;

(d)    The Action involves complex factual and legal issues prosecuted over several years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(e)    Had Class Counsel not achieved the Settlement, there would remain a significant risk that the Named Plaintiffs and the Class may have recovered less or nothing from the Defendants;

(f)    The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are consistent with awards in similar cases;

(g)    Class Counsel has devoted over _____ hours, with a lodestar value of $_____, to achieve the Settlement; and

(h)    The Named Plaintiffs rendered valuable service to the Plan and to all Plan Participants. Without their participation, there would have been no case and no Settlement.

18.    Neither the Settlement Agreement nor the terms of the Settlement Agreement shall be offered or received in any Action or proceeding for any purposes, except (i) in an action or proceeding arising under the Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Order, or (ii) in any action or proceeding where the Releases provided pursuant to the Settlement Agreement may serve as a bar to recovery, or (iii) in any action or proceeding to determine the availability, scope, or extent of insurance

481501

2531591v5

coverage (or reinsurance related to such coverage) for the sums expended for the Settlement and defense of the Action.

19. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over the (a) implementation of the Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, costs, interest and reimbursement of expenses in the Action; and (d) all Parties hereto for the purpose of construing, enforcing and administering the Settlement.

20. The Court finds that during the course of the Action, the Named Plaintiffs and the Defendants and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

21. In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants or their insurers, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated, and in such event, all orders entered and Releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

22. Final judgment shall be entered herein.

SO ORDERED this _____ day of _____, 2007.

_____

DEAN WHIPPLE, UNITED STATES DISTRICT JUDGE

6